274 Wis. 210 (1956)
HOME FIRE & MARINE INSURANCE COMPANY, Respondent,
vs.
FARMERS MUTUAL AUTOMOBILE INSURANCE COMPANY, Appellant.
Supreme Court of Wisconsin.
November 8, 1956.
December 4, 1956.
*211 For the appellant there was a brief by Peickert, Anderson & Fisher, and oral argument by Robert A. Fisher and by John E. Shannon, Jr., all of Stevens Point.
For the respondent there was a brief by Reiland & Schmidt of Wisconsin Rapids, and oral argument by Donald E. Reiland.
CURRIE, J.
While much of defendant's brief is devoted to another issue, such brief does request a reversal and dismissal of plaintiff's complaint on the grounds that the negligence of plaintiff's insured, Simon, was at least equal to or greater than that of defendant's insured, Hamm. We deem this issue to be decisive of the appeal.
The collision occurred about 4:15 p. m. on March 11, 1954, at a right-angle street intersection in the city of Wisconsin Rapids. Peach street runs in an easterly and westerly direction and Sixth street extends in a northerly and southerly direction. A high school and its surrounding grounds are located at the southwest corner of such intersection, but the building is not close enough to the street to have caused an obstruction of view of the two drivers involved in the accident. The paved portion of Peach street east of the intersection is 29 feet wide, and west of the intersection is *212 58 feet wide, while the paved portion of Sixth street is 32 feet wide. Because school had just let out a few minutes prior to the accident and school children were leaving the school grounds, the maximum legal rate of speed for both vehicles was 15 miles per hour under the provisions of sec. 85.40 (1) (c), Stats.
Simon, at the time of the accident, was accompanied by his wife and was driving his automobile in an easterly direction on Peach street, while Hamm was driving his father's automobile in a northerly direction on Sixth street. Hamm was seventeen years of age and possessed a temporary driver's permit. The Hamm car, before the accident, had been parked in the school parking lot to the south of the high school. After school let out, Hamm, together with five boy companions who rode to and from school with him, occupied the car, which car entered Sixth street from the parking lot. Hamm had proceeded on Sixth street only a distance of a block or less when the accident occurred. In fact, Hamm had not yet shifted his car out of second gear to high when the collision took place.
Hamm, both at the trial and in a prior signed statement given plaintiff's attorneys, estimated his speed at 15 miles per hour. It is apparent that the learned trial court believed this testimony because it did not find Hamm guilty of negligence as to speed.
Simon, at the trial, estimated that the speed of his vehicle was 15 to 20 miles per hour, and at no time did he reduce his speed. In a prior signed statement given to the defendant Insurance Company he had estimated his speed at from 20 to 25 miles per hour. Simon testified that as he entered the intersection he made an observation but did not notice any car or vehicle "near" the intersection. However, he also testified that as he was entering the intersection he did see the Hamm car 50 or 60 feet south of the intersection proceeding in a northerly direction at a speed of from 25 to 30 miles *213 per hour. When about half way through the intersection Mrs. Simon exclaimed, "He's going to hit us." Simon then attempted to swerve his car to the left and the impact immediately followed, the front of the Hamm car striking the right fender and door of the Simon vehicle. Simon then lost control of his car and it proceeded in a northeasterly direction, grazing two trees, and coming to rest against a house located at the northeast corner of the intersection.
Hamm testified that there were cars parked in front of the high school at the southwest corner of the intersection which obstructed his view and that he first saw the Simon car when it was 20 feet west of the intersection and the Hamm car was 10 feet south of the intersection. Hamm immediately applied his brakes and turned to the right or east in an attempt to avoid the collision. In a prior signed statement Hamm stated that he first saw the Simon car when the two vehicles were about 15 feet apart. However, Simon testified after the accident that he had asked Hamm whether he had not seen "us," to which Hamm had replied, "No, I didn't." A policeman who investigated the accident identified the point of impact as being 10 feet west of the east curb line, and eight feet north of the south curb line, of the intersection, thus placing it in the southeast quadrant of the intersection. This officer also testified that there were skid marks from the Hamm car 10 feet in length, which skid marks veered slightly to the east. He also stated that the Hamm car had come to a complete stop after the accident within a distance of two feet from the point of impact. The damage to the Hamm car was so slight that Hamm was able to drive it home after the accident.
On the basis of the foregoing evidence the trial court rightly held both drivers guilty of negligence as to lookout. If the comparison of negligence turned only on the issue of lookout we probably would not overturn a finding attributing the greater percentage of negligence to Hamm. However, *214 the failure of Simon to yield the right of way stands out like a sore thumb in the foregoing summary of the evidence.
Sec. 85.18 (1), Stats., provides:
"When two vehicles approach or enter an intersection at approximately the same time, the driver of the vehicle on the left shall yield the right of way to the vehicle on the right, except as otherwise provided in this section. The driver of any vehicle driving at an unlawful speed shall forfeit any right of way which he might otherwise have hereunder."
Even though the Simon car was traveling at a slightly greater speed than the Hamm vehicle, the location of the point of impact would support an inference that the Simon car entered the intersection first. However, there was still a duty on the part of Simon to yield the right of way to Hamm if the two vehicles approached the intersection at "approximately the same time." In Vogel v. Vetting (1953), 265 Wis. 19, 25, 26, 60 N. W. (2d) 399, this court held that the test of whether two vehicles are approaching at "approximately the same time" under this statute is whether there would be imminent hazard of a collision if both continued the same course at the same speed. This test was later cited with approval in Kraskey v. Johnson (1954), 266 Wis. 201, 206, 63 N. W. (2d) 112. Applying such test to the facts in the instant case, there can be no doubt that both were approaching the intersection at the same time, and, therefore, it was the duty of Simon to yield the right of way to Hamm, Hamm not having forfeited such right of way by excessive speed.
While it is only in an unusual case that this court will disturb the comparison of negligence made by a trier of fact, be it jury or court, we believe this to be such a case. We have also declared many times that each automobile accident case must be decided under its own peculiar facts. We cannot escape the conclusion in the instant case that the negligent lookout on the part of Simon together with his failure to yield *215 the right of way resulted in his negligence being at least equal to if not greater than that of Hamm. This determination requires that plaintiff's cause of action be dismissed on the merits.
By the Court.Judgment reversed, and cause remanded with directions to dismiss plaintiff's complaint.
STEINLE, J., took no part.