FIELD, by Guardian *ad litem,* and another, Respondents, v. VINOGRAD and another, Appellants.

*May 3—June 7, 1960.*

501

502

For the appellants there were briefs by *Aberg, Bell, Blake & Metzner* and *Milo G. Flaten,* all of Madison, and oral argument by *Carroll E. Metzner.*

For the respondents there was a brief and oral argument by *William L. McCusker* of Madison.

MARTIN, C. J.   The accident occurred at about 8:45 p. m. on May 10, 1957, at the intersection of Whenona drive and West Beltline Highway at the southwest outskirts of the

city of Madison. At the place of the accident the beltline is two lanes wide, of a total width of 24 feet, and runs in a generally east and west direction. Whenona drive runs north and south and intersects the beltline at right angles. On the day of the accident construction work was being carried on along the beltline, and Whenona drive to the north of the intersection was torn up and disconnected.

It was dark; it had rained and the pavement of the Beltline Highway was "very wet." There were no street lights at the intersection. There was a Dairy Queen store south and east thereof. Billy Field, aged twelve years, lived north of the beltline several blocks from where the accident happened. He and a friend, Kenneth Clarke, had made some purchases at the Dairy Queen and intended to return to the Field home. Kenneth went on ahead, proceeded to the intersection and waited at the edge of the beltline for traffic to pass. He testified he had no difficulty in seeing the cars coming from either direction. When the traffic on the highway cleared he ran straight across at the intersection.

Emmet Kriesel was in his car parked at the stop sign on the east side of Whenona drive just south of the beltline, facing north. He saw Billy come from the right side of his car and run across the intersection on a diagonal from the southeast corner to the northwest corner. Billy was wearing dark overall pants, a dark-blue jacket, and a white sailor cap. Kriesel testified that on reaching the center line of the highway Billy "hesitated and took a couple of more steps, and stopped abruptly," then took two running steps farther into the westbound lane of traffic and was struck by the Vinograd automobile. The impact took place in the northwest quadrant of the intersection.

Kriesel testified he saw the Vinograd car before the accident but could not say how close it was to the boy when Billy reached the center line; that it was approaching from

the east at a speed which he estimated at about 40 or 45 miles per hour; that the driver appeared to be "a little confused as to what the kid was going to do, and he swung the car to the left and then to the right. . . . It appeared to me as though he was going pretty much to the left when he hit the kid," then Dr. Vinograd turned hard to the right and stopped.

Billy Field was rendered unconscious by the impact; he could remember nothing of the accident and was unable to testify to anything that occurred after he left his home to go to the Dairy Queen store. He had crossed the beltline many times, knew it was a main highway with fairly fast traffic and his parents had told him about watching for cars and the precautions to take before crossing the road.

Dr. Vinograd testified that immediately before the accident he was traveling west on the beltline with his headlights on low beam; that when he first saw the boy, Billy was standing still at the center line of the highway and looking directly at the Vinograd car. Vinograd tested his lights on low beam after the accident and determined that they would carry 125 to 150 feet and it was his estimate that that was the distance at which he first saw the boy. Dr. Vinograd testified he did not apply his brakes hard because that would have caused the car to skid; that it was his impression that the boy was waiting to let him pass; that the boy suddenly bolted into the westbound lane; that it was then his intention to turn left to go around behind the boy but he was not certain whether he actually moved to the left or not because Billy suddenly came to a stop again in the middle of the lane and at this time Vinograd veered sharply to his right; it was too late to stop.

Sec. 85.44 (4), Stats. 1955, provides:

"Every pedestrian crossing a highway at any point other than a marked or unmarked crosswalk shall yield the right of way to vehicles upon the highway."

It has been consistently held that the duty of the pedestrian under this statute is absolute regardless of any negligence on the part of a driver and that failure to yield the right of way constitutes causal negligence as a matter of law. *De Goey v. Hermsen* (1939), 233 Wis. 69, 288 N. W. 770; *Bassil v. Fay* (1954), 267 Wis. 265, 64 N. W. (2d) 826. It is undisputed that Billy Field was crossing the beltline where there was no crosswalk, that he was cutting across the highway at a diagonal, running onto the highway when the defendant's car was close to him. It was incumbent upon the trial court to find him causally negligent in that respect as a matter of law, and it so found, stating in its memorandum decision:

"There was no question under the evidence but that the little boy had angled across the highway directly in front of the defendant's westbound automobile, and that although he stopped momentarily at the center line he continued his course in the path of the car where he was struck. He knew the dangers of the West Beltline Highway, and had crossed it on other occasions with admonition from his parents. There is no question but that he was negligent in failing to yield the right of way to the defendant driver."

In discussion between court and counsel on the form of the verdict and the instructions, the court stated it would have to find as a matter of law that Billy Field was causally negligent in failing to yield the right of way. Plaintiffs' counsel then requested that the court instruct the jury "that it is not by so doing finding that Dr. Vinograd is not negligent or that his negligence is equal to or greater than or less than Billy Field's."

In the instructions to the jury the trial court advised of its finding in that respect and stated:

"You are instructed that in making such findings the court does not thereby find that the defendant Vinograd was or was not negligent, and the court does not thereby

find that the negligence of defendant Vinograd, if any, was or was not greater than, equal to, or less than the negligence of Billy Field. The court leaves the determination of other items of the verdict to the jury, including the apportionment of any negligence between the parties, if you determine that both parties are negligent and their negligence causal."

This instruction was given in the early part of the instructions.

In respect to questions as to Vinograd's negligence the jury found him causally negligent as to lookout and management and control, not negligent as to speed; it found Billy Field causally negligent as to lookout; and it apportioned the negligence 50–50. In its memorandum decision the trial court stated:

"Although the court followed the plaintiffs' request for a particular instruction in this respect, the point at which the court included plaintiffs' requested instruction in the body of its instructions to the jury may have been prejudicial to the plaintiffs in that it was given early in the instructions and never repeated. An instruction relative to the precise issue of comparative negligence was originally prepared by the court but it was deleted from the court's charge on that question because of the prior charge given in the form requested by plaintiffs."

We cannot see how the position in the instructions of the particular charge referred to could have been prejudicial to the plaintiffs. Nor did plaintiffs' counsel consider that it made any difference where the requested instruction was read. When he was asked by the trial court as to where he desired it to be incorporated—"in the comparative-negligence section?"—counsel replied that, "I don't care particularly at what point, except that I think that at some point the court should . . ."

In giving its instructions the trial court treated in chronological order the questions submitted in the special verdict.

In connection with the questions as to Vinograd's negligence, it instructed that the defendant was entitled to rely on the assumption that any pedestrian crossing the highway where there was no crosswalk would yield the right of way, read sec. 85.44 (4), Stats., and stated that it was in that connection that the court had concluded as a matter of law that Billy Field was negligent in failing to yield the right of way to Vinograd. This is followed by the instruction that a driver owes a special responsibility of care and safety of children, a higher degree of care than that required for the protection of adults, that such a driver is charged with the knowledge of .childish traits and ought reasonably to anticipate that the child might suddenly dart or move about upon the highway.

The court instructed as to the defendant's duty to maintain a proper lookout, his duty of exercising due care generally and under circumstances where he is confronted with some person or object invading his lane of travel, and gave an instruction on emergency. As to the latter he included the statement, "and you will also take into consideration the court's instructions with reference to the duty of Billy Field to yield the right of way."

As to question 3, which dealt with Billy Field's negligence, the court instructed the jury fully as to the lesser degree of care to which a child is held than is an adult. It instructed that the jury need not answer sub. (a) of question 3 with respect to yielding the right of way since that had been answered by the court, and in specifically dealing with sub. (b) as to the boy's lookout, it again instructed the jury to consider his age, capacity, discretion, knowledge, and experience. In discussing the "cause" questions it mentioned that that inquiry with respect to Billy Field's failure to yield the right of way had been answered by the court.

With reference to question 5, which required a comparison of the negligence, the court instructed, among other things:

"In apportioning the negligence, you should take into consideration the fact that Sherman Vinograd was an adult, and Billy Field was a child, at the time of the accident. The degree of negligence attributed to a party is not to be measured by the character thereof, nor by the number of respects in which he is found to have been at fault. The jury in answering this comparative-negligence question is called upon to weigh evidence, and not causative effect. If called upon under these instructions, it is for you, the jury, and not for the court, to compare the negligence of Sherman Vinograd and Billy Field."

Considering the comparison of negligence made by the jury, the trial court concluded that a new trial should be had in the interests of justice because "the issues were not fairly deliberated, and that the issue of comparative negligence in particular was not fairly deliberated." This was based on the view that in giving its instructions to the jury the court had several times referred to the finding by the court that Billy Field was negligent in failing to yield the right of way, "and this emphasis upon the court's finding as to plaintiff's negligence could not help but unduly influence the jury." It pointed out the necessity of making such a finding poses a difficult problem for a trial court, and observed:

"It may be that regardless of how the court might have instructed the jury relative to its finding of negligence as a matter of law on the part of the boy, that the jury nevertheless would have given it more weight than their own findings of negligence as to the driver, simply because of the fact that a finding was made by the court."

In so stating, it made reference to a personal comment of another circuit judge expressed in a speech given at a conference of the board of circuit judges. The comment grew

out of the speaker's discussion with a juror after a 50–50 apportionment had been made in a case where the negligence of a driver was found by the court to exist as a matter of law.

It may be that in comparing the negligence in such a case a jury will give great weight to the finding by the court and the problem is inherent in a situation where the court is compelled to make such a finding. But it can and should be met by instructions making it clear that no greater weight should be given such a finding than should be given to a finding made by the jury. The question here is whether the court's instructions did in fact make that clear to the jury. As pointed out above, the court gave that distinct instruction, as requested by plaintiffs, and we see no reason to consider it inadequate simply because it was given in the early part of the instructions rather than at the point where the court dealt specifically with the question on comparison.

Neither do we consider that in the remaining portion of the instructions the trial court placed undue emphasis on its matter-of-law finding. It was mentioned no more often than a thorough treatment of the subject matter called for. Repetition, of itself, is not to be condemned. It would be improper only where it was clearly so superfluous as to create in the minds of the jury the impression that the finding of the court carried greater weight than its own findings.

The instructions must be considered as a whole. It is to be noted that in several places the court emphasized the fact that Billy Field was a child; that a driver's responsibility for the safety of a child is greater than that with respect to an adult; and that the law holds a child to a lesser degree of care than it does an adult. And these factors are emphasized in the final words of the instructions.

Moreover, in instructing with regard to the questions on Vinograd's negligence the court stated, among other things:

"An automobile moving at an ordinary speed requires the careful attention of the driver if it is not to become a menace to the safety of other users of the highway. The dangers incident upon inattention of the driver of an automobile are very great. Where the danger resulting from inadvertence is great, the care known as ordinary care calls for a higher degree of care than where the danger resulting from inadvertence is slight. . . .

"Ordinary care demands that vigilance be increased in the management and control of an automobile where special circumstances exist. . . . When a driver is confronted with some person or object invading his lane of travel, proper management and control may require turning so as to avoid striking such person or object, instead of merely attempting to stop."

As mentioned above, there was repetition of the fact that Billy Field was a child and the jury should keep in mind the difference between the defendant and the minor. All of these instructions were at least favorable to the plaintiffs and, in our opinion, balanced any repetition in reference to the court's finding on the child's negligence.

The instructions were not prejudicial to the plaintiffs. Equal apportionment of negligence by the jury was a reasonable conclusion to be made under all the facts of the case. Nothing in the verdict indicates prejudice or confusion in the minds of the jury. The trial court stated in its decision that the verdict is neither contrary to law or the evidence, that it is not contrary to the "great or greater weight or preponderance of the evidence." And while it stated that "the court's conscience will not permit this verdict to stand," it also stated:

"The court cannot go so far as to say that the *result* in this case shocks the conscience or that the jury verdict was in any respect perverse."

In the course of oral argument on motions after verdict, the trial court invited both counsel to comment on whether the jury was dominated by what it considered the effect of its verdict would be in making the 50–50 apportionment, and plaintiffs' attorney stated that he had discussed the case with some of the jurors and could assure the court that they did not know what they were doing when they divided the negligence. Whether or not the court was influenced by the statement, the rule is well established that any attempt to impeach a jury verdict, even by statements of jurors themselves, will not be permitted. See *Olson v. Williams* (1955), 270 Wis. 57, 70 N. W. (2d) 10, and cases there cited.

Sec. 270.49 (2), Stats., provides that "No order granting a new trial in the interest of justice shall be valid or effective, unless the reasons that prompted the court to make such order are set forth in detail therein." The reason given for the order appealed from is "that undue prominence was given by the jury to the court's findings that the minor plaintiff [William Field] was negligent as a matter of law in failure to yield the right of way to the defendant, Sherman Vinograd, and that this resulted in the plaintiff not receiving the full and fair deliberation of the jury upon the issue of comparative negligence."

This conclusion obviously arises from the fact that the jury apportioned the negligence differently than the court would have done. In *Dowd v. Palmer* (1944), 245 Wis. 593, 596, 15 N. W. (2d) 809, this court held:

"The fact that the trial judge in a jury case may not entirely concur in the jury's verdict, if there is an absence of substantial incidents of a misleading nature clearly indicating that in the interest of justice there should be a re-examination of an issue of fact, does not give occasion for granting a new trial."

The trial court had no choice but to make the finding as to the boy's causal negligence in failing to yield the right of way, and in our opinion the instructions given adequately advised the jury as to the weight to which such finding was entitled in its deliberations. Under these circumstances, the order fails to state sufficient grounds for a new trial.

Under a notice of review filed by the plaintiffs, several contentions are made, the first of which is that the court erred in instructions on damages by cautionary instructions and singling out certain testimony.

Billy Field sustained severe head injuries, leg fractures, and extensive lacerations. Plaintiffs complain of the following instruction which was given in connection with the damage questions:

"Specifically, you are instructed that there has been testimony relative to a 'stinging' sensation upon the right side of Billy Field's head. Some of the testimony on this subject consists of medical opinion based upon statements of the plaintiff. You should consider this opinion evidence with caution and scrutiny. You should make no award of damages based upon guess, speculation, or conjecture."

This instruction was warranted by the testimony. Two doctors testified that in March of 1959, Billy complained of headaches. Dr. Nereim testified that he believed the boy was actually experiencing headaches and attributed them "to his old head injury, perhaps." Dr. Suckle testified, "the headaches are a subjective complaint which the patient has following the injury," and "I believe that we will have to believe that he will have headaches in the future." Billy himself testified he had a "stinging feeling" on the side of his head, "not just like a headache," not an ache or a throb. His vague description of the "stinging" was drawn from him with great difficulty. In answer to a question whether the

mild memory impairment and increased social withdrawal as a consequence of emotional trauma will be permanent, Dr. Suckle testified, "I don't think we can say to a reasonable certainty that they are permanent." Following that, he testified, "I believe that there is a reasonable likelihood that the memory impairment will be permanent." The testimony as to the residuals of the head injuries was less than satisfactory, if not in fact conflicting. Under such circumstances the admonition of the court that the jury should not engage in speculation or conjecture in considering this evidence was proper.

The next point advanced for review is the instruction which the court gave on the emergency doctrine. The witness Kriesel testified Billy ran into the highway and stopped at the center line. Defendant testified that was the boy's position when he first saw him and it was his impression that Billy was waiting for him to pass; it was not until the boy ran into his lane and stopped again that defendant veered sharply to avoid him. It must be noted that the description of the boy's actions given by the defendant was the same as that testified to by Kriesel. With this evidence in the record the defendant was entitled to an instruction on emergency.

Plaintiffs further contend it was error for the trial court to instruct, as to defendant's lookout and management and control, that he was entitled to rely on the assumption that a pedestrian will observe the right of way. The gist of plaintiffs' argument is that the "right to rely" instruction in these respects "spotlighted" the court's finding as to Billy's failure to yield the right of way and thus affected the comparison of negligence. We have already discussed that proposition. It is not disputed that defendant had the right to rely on the boy's observation of his right of way until he knew it was not being observed, and, in any event, since the jury found

causal negligence on the part of the defendant both as to look-out and management and control, the instructions were not prejudicial to the plaintiffs. These were jury questions and they were answered in plaintiffs' favor.

Finally, it is argued that the court erred in omitting from the instructions relating to the question of defendant's speed a portion of sec. 85.40 (2) (a), Stats. The court read the portion:

"(2) (a) No person shall operate a vehicle at a speed greater than is reasonable and prudent under conditions and having regard for the actual and potential hazards then existing"

and refused to include the remainder, which reads:

"and the speed of the vehicle shall be so controlled as may be necessary to avoid colliding with any object, person, vehicle, or other conveyance on or entering the highway in compliance with legal requirements and using due care."

Since Billy Field was not on the highway "in compliance with legal requirements and using due care," that part of the subsection did not apply to the facts of the case and was properly omitted from the instructions.

*By the Court.*—Order reversed, and cause remanded with instructions to reinstate the jury verdict and enter judgment thereon.