NIEDBALSKI, Plaintiff and Appellant, v. CUCHNA, Defendant and Respondent.

HOOPLE, Plaintiff and Respondent, v. MUTUAL SERVICE CASUALTY INSURANCE COMPANY, Defendant and Appellant.

CUCHNA, Plaintiff and Respondent, v. MUTUAL SERVICE CASUALTY INSURANCE COMPANY, Defendant and Appellant.

*March 8—April 4, 1961.*

For the appellants there were briefs by *Johns, Roraff, Pappas & Flaherty* of La Crosse, and oral argument by *Daniel T. Flaherty.*

For the respondents there was a brief by *Engelhard, Snodgrass & Goerdt* of La Crosse, and oral argument by *Lawrence M. Englehard.*

FAIRCHILD, J.  1. *Claim of prejudicial error in form of verdict.* The court found as a matter of law that Niedbalski was negligent with respect to a left-turn signal and with respect to deviation from the traffic lane in which he was

operating. The jury found the negligence in both respects causal. Appellants claim that the court was required to find as a matter of law that Hoople was negligent with respect to sounding his horn and with respect to lookout. The jury did find him negligent in those respects, and that his negligence was causal. Appellants say that because of the weight which a jury customarily gives to opinions of the trial judge, his finding of negligence on the part of Niedbalski and his failure to find it on the part of Hoople unfairly affected the comparison made by the jury between Hoople's causal negligence, which the jury found for itself, and Niedbalski's negligence which the court found to exist, and which the jury found to be causal.

The judge did instruct the jury that in determining whether Niedbalski's negligence was a cause of the collision, "you will make such determination wholly uninfluenced by the fact that the court, rather than yourselves, answered the negligence question 'Yes.'" The court did not give an instruction with respect to the comparison question cautioning the jury not to give greater or lesser importance or weight to the finding of the court that a party was negligent than to a similar finding made by the jury.[1] No such instruction was requested.

Assuming that under the evidence the court properly answered the questions as to Niedbalski's negligence "Yes," but that the court should also have answered the first two questions as to Hoople's negligence "Yes," as the jury subsequently did, we find no prejudicial error. We recognize the possibility that because of respect for the trial judge's experience and knowledge of the law, and confidence in his impartiality, a jury may give more weight to a finding made by the judge than to a similar finding which it makes for itself. It is possible for the same reason that when it reaches

[1] See Wis J I—Civil, Part I, 1595.

the comparison question, it may give disproportionally greater importance to negligence found by the judge than to negligence found by the jury. We suppose there might be cases where on review it so clearly appears from the circumstances that this must have happened, that a new trial should be had in the interest of justice. We decline, however, to adopt a rule based on a premise that a jury attributes disproportionate importance to negligence found by the judge in all, or a substantial number of the cases in which findings are made as a matter of law. In a recent case,[2] a trial judge concluded on motions after verdict that the jury had given disproportionate importance to plaintiff's negligence found as a matter of law by the judge in comparing it with negligence on the part of the defendant found by the jury for itself. The judge ordered a new trial, but we reversed.

In the case now before us, the trial judge considered that the claim had no merit. We agree.

2. *Niedbalski's negligence with respect to deviation.* On the grade where the accident occurred, there were three marked lanes. Signs designated the center lane for uphill, or westbound traffic, and the northerly lane for slow, westbound traffic.

Sec. 85.15 (1), Stats. 1955, provided:

*"Operate on the right side of highway. . . .* the operator of a vehicle shall operate the same . . . in the right-hand lane of a three-lane highway, unless it is impractical to travel . . . in such lane and except when preparing to make a left turn from a three-lane highway or when overtaking and passing another vehicle, subject to the limitations applicable to overtaking and passing as set forth in this chapter. . . . *The foregoing provisions shall not be deemed to prevent the marking of lanes for traffic upon any roadway and the allocation of designated lanes to traffic moving in a particular direction . . ."* (Emphasis supplied.)

---

[2] *Field v. Vinograd* (1960), 10 Wis. (2d) 500, 103 N. W. (2d) 671.

Sec. 85.15 (5), Stats. 1955, provided:

*"Operating on three-lane highways.* Upon a roadway which is divided into three lanes a vehicle shall not be operated in the center lane except when overtaking and passing another vehicle where the roadway is clearly visible and such center lane is clear of traffic within a safe distance, or in preparation for a left turn, or where *such center lane is at the time allocated exclusively to traffic moving in the direction the vehicle is proceeding and is marked or posted to give notice of such allocation."* (Emphasis supplied.)

Sec. 85.17 (2), Stats. 1955, provided:

*"Turning left.* The operator of a vehicle intending to turn to the left at an intersection . . . shall make such turn . . . from the center lane of a highway having an uneven number of lanes *unless such center lane has been posted or marked for vehicles moving in the opposite direction.* In making the turn, he shall pass immediately to the left of the center of the intersection, passing as closely as practicable to the left of the center of the intersection, . . ." (Emphasis supplied.)

We conclude that in the vicinity of the accident, because of the designation of the center lane for westbound traffic, an eastbound driver was required to operate in the southerly lane except that he could use the center lane under the same circumstances under which a driver may use the left-hand lane of a two-lane highway. It is undisputed that Niedbalski entered the center lane a considerable distance before the intersection. Because the center lane was designated for westbound traffic, he was not entitled to enter the center lane in preparation for making his left turn, and in order to have made his left turn properly should have remained in the southerly lane until he reached the intersection.

Sec. 85.16 (2), Stats. 1955, provided:

*"Vehicles to keep in traffic lanes.* The operator of a vehicle upon a roadway shall not deviate from the traffic lane in which he is operating without first ascertaining that such

movement can be made with safety to other vehicles approaching from the rear."

Niedbalski was also required to fulfil the statute just quoted. Hoople testified that the truck was in the center lane before Niedbalski began to turn to his left. If that was correct, the danger involved in the deviation would be obvious. Taking the evidence most favorable to Niedbalski, we must assume that the truck was in the southerly lane just before Niedbalski began to turn. Niedbalski admittedly knew that Hoople was gaining on him. In fact, Hoople was traveling about twice as fast. It cannot be said that Niedbalski ascertained that his turn could be made with safety to vehicles approaching from the rear.

The trial court correctly determined as a matter of law that Niedbalski was negligent in this respect.

3. *Omission of the issue of management and control.* Appellants requested that there be a question in the special verdict inquiring as to Hoople's negligence with respect to management and control, and assert that it was error to omit it. In making the request that the question be submitted, appellants' counsel relied upon two propositions which he said the evidence tended to show. One was that Hoople should have reduced his speed as he approached the rear of the slow-moving car. The other was that Hoople's application of his foot brake, operative on all wheels of the tractor and trailer, impeded his ability to steer more than would have been true if he had used his hand brake, operative only on the wheels of the trailer. On argument here, he has added the suggestion that if Hoople had turned slightly to the right instead of to the left, he would have avoided the impact.

Although it is possible from Niedbalski's testimony that the truck may have been in the southerly lane and more than 100 feet behind Niedbalski when Niedbalski began to turn,

all parties seem to have assumed that Hoople had at least commenced to change lanes before he saw Niedbalski's change of course. This may well be true, for we are dealing with a 25-ton vehicle, nearly 45 feet long, going 40 to 45 miles per hour down a three or four per cent grade, overtaking a car going 20 or 25 miles per hour.

The circuit court was of the opinion that the question whether Hoople ought to have reduced his speed as he came up behind Niedbalski (before he noticed Niedbalski's turn) was included within the question of negligence as to speed. The court instructed the jury that the speed limit applicable to the truck was 45 miles per hour, but that in any event no person shall operate a vehicle at a speed greater than is reasonable and prudent under conditions and having regard for the actual or potential hazards then existing, and the speed of a vehicle shall be so controlled as may be necessary to avoid colliding with another automobile on, or entering, the highway in compliance with legal requirements and using due care.

We agree that the question whether Hoople should have reduced his speed before he noticed Niedbalski's turn was properly submitted. The jury found that Hoople was causally negligent as to lookout. This presumably meant that he should have seen and been alerted by Niedbalski's brake lights, and that he did not notice Niedbalski's change in course as soon as he should. The jury's finding that he was not negligent as to speed must have meant that under the circumstances, it was reasonable for him to choose to maintain his speed and avoid Niedbalski by passing him rather than to reduce speed and prepare to remain behind him.

With respect to management and control, after Hoople became aware that Niedbalski was turning to the left it is conceivable that Hoople could have steered a slightly different course if he had applied his brakes in a different fashion.

We are of the opinion, however, that without other evidence than is in this record on the control of heavy tractor-trailer units, it would be speculative to say that ordinary care required Hoople to act differently, or that the difference would probably have affected the result.

4. *Comparison of negligence.* Appellants' final claim is that Hoople's negligence was as a matter of law more than 50 per cent of the total causal negligence. The comparison of the negligence of the parties is peculiarly within the province of the jury.[3] We find no reason to say in this case that the apportionment decided upon by the jury cannot be sustained. Appellants rely upon our decision in *Bannach v. State Farm Mut. Automobile Ins. Co.* (1958), 4 Wis. (2d) 194, 90 N. W. (2d) 121, where we did set aside a jury finding of comparison of negligence. While the plaintiff driver in that case was struck by the defendant who approached from the rear, and there are certain other similarities to the facts of the present case, there are also important differences. The road was very slippery. The collision occurred in the lane in which both vehicles had been traveling. The defendant was found negligent as to speed. Each automobile case must be decided under its own peculiar facts.[4]

*By the Court.*—Judgments affirmed.

[3] *Hadjenian v. Sears, Roebuck & Co.* (1958), 4 Wis. (2d) 298, 303, 90 N. W. (2d) 786.

[4] *Home Fire & Marine Ins. Co. v. Farmers Mut. Automobile Ins. Co.* (1956), 274 Wis. 210, 214, 79 N. W. (2d) 834.