MORITZ, Appellant, v. ALLIED AMERICAN MUTUAL FIRE INSURANCE COMPANY and another, Respondents.

*February 5—March 2, 1965.*

14

For the appellant there were briefs by *Dudley O. Emmert* of Manitowoc and *Bert E. Fredrickson* of Green Bay, and oral argument by *Mr. Emmert*.

For the respondents there was a brief by *Welsh, Trowbridge, Bills, Planert & Gould* of Green Bay, and oral argument by *Lloyd J. Planert*.

WILKIE, J. There are four issues presented on this appeal:

1. Did the trial court err in failing to find that appellant was negligent in operating her vehicle as a matter of law?

2. Did the trial court err in submitting an ultimate-fact verdict rather than a detailed verdict?

3. Did the trial court err in holding excessive the jury's $6,500 damage award for personal injuries, and in reducing that award to $3,500 under the *Powers* rule?

4. Did the trial court err in striking the damage award of $1,500 for nursing and domestic services?

### *Mrs. Moritz's Negligence.*

The case was submitted to the jury on an ultimate-fact rather than a detailed form of special verdict as respondents desired. The trial court found, as a matter of law, that Erickson had operated his vehicle in a negligent manner prior to the accident. The trial court refused to find Mrs. Moritz negligent as a matter of law. Respondents contend that the court erred in failing to find appellant negligent as a matter of law in regard to lookout and turning. In *Zeitlow v. Western Casualty & Surety Co.*[1] this court rejected a claim that the trial court erred in not finding the plaintiff negligent as a matter of law, by saying:

"We do not agree with appellants that error was thus committed but, if there was, the error would be harmless, for the jury answered the question as appellants wished the court to answer it. And if the court had answered as appellants requested, *the jury would still have to make the comparison of causal negligence between the parties.*"

In the present case, it could not be said, after viewing the evidence as a whole, that Mrs. Moritz was negligent in any respect as a matter of law. However, it is not necessary to

---

[1] (1962), 17 Wis. (2d) 172, 176, 115 N. W. (2d) 758.

discuss the facts in detail because even if she was negligent, respondents were not harmed by the trial court's failure to so find since the jury ultimately found her 20 percent causally negligent.

*Use of Ultimate-Fact Verdict.*

Respondents maintain that they were prejudiced by the finding of negligence on Erickson's part since the jury was unduly influenced by this determination when apportioning negligence between the parties. It is true, as the court recognized in *Niedbalski v. Cuchna* that:

". . . because of respect for the trial judge's experience and knowledge of the law, and confidence in his impartiality, a jury may give more weight to a finding made by the judge than to a similar finding which it makes for itself. It is possible for the same reason that when it reaches the comparison question, it may give disproportionally greater importance to negligence found by the judge than to negligence found by the jury. We suppose there might be cases where on review it so clearly appears from the circumstances that this must have happened, that a new trial should be had in the interest of justice." [2]

But the court continued:

"We decline, however, to adopt a rule based on a premise that a jury attributes disproportionate importance to negligence found by the judge in all, or a substantial number of the cases in which findings are made as a matter of law." [3]

That Erickson was found to be 80 percent negligent does not of itself establish that the jury was swayed. It is not at all surprising that the one who runs into the rear of another automobile is found to be much more at fault than the other driver. To conclude that a jury has placed improper

---

[2] (1961), 13 Wis. (2d) 308, 313, 108 N. W. (2d) 576. See also *Field v. Vinograd* (1960), 10 Wis. (2d) 500, 103 N. W. (2d) 671.
[3] *Niedbalski v. Cuchna, supra,* footnote 2, at page 314.

weight on a finding by the trial court, it must appear from all the facts, and the record taken as a whole, that such influence could be the only explanation for the negligence apportionment. There is nothing in the present case to indicate that the finding had any effect on the jury whatsoever.

It is true that the jury was not instructed with respect to the comparison question "cautioning the jury not to give greater or lesser importance or weight to the finding of the court that a party was negligent than to a similar finding made by the jury." [4] But respondents did not request such an instruction and thus cannot complain about the failure to give it.

Respondents assert that when one party is found negligent as a matter of law while the other is not, the negligent party is prejudiced unless the case is submitted to the jury on the detailed form of special verdict. Respondents contend that otherwise the jury could be led to believe that the party is necessarily negligent in all respects—*i.e.,* lookout, speed, management and control, etc., while in fact there is no negligence in regard to each, and that this thus influences their negligence comparison. No authority is cited to support this proposition. If this contention is correct, the use of the omnibus form of verdict will be greatly restricted.

Although the trial court found Erickson negligent as a matter of law it clearly limited that finding to Erickson's speed and further instructed the jury on other aspects of Erickson's possible negligence, namely, lookout, management and control. Under these circumstances, respondents were not prejudiced by the ultimate-fact form of special verdict.

### Recovery for Personal Injuries.

The jury awarded Mrs. Moritz $6,500 for her personal injuries. The trial judge, after ruling out the possibility

---

[4] *Niedbalski v. Cuchna, supra,* footnote 2, at page 313. Wis J I—Civil, Part II, 1595.

of any error occurring on the trial and any passion or prejudice on the part of the jury, decided that the award was "excessive." He gave no reasons or explanation for this conclusion. Pursuant to *Powers v. Allstate Ins. Co.*[5] he found that $3,500 was "fair and reasonable" compensation for her injuries.

This is another instance similar to those in which we have been asked very recently[6] to review (1) a trial court's determination that a jury award for personal injuries is excessive, but not caused by passion, or prejudice, and is not the result of error occurring during the trial, and (2) the sum fixed as reasonable by the trial court under *Powers* allowing the plaintiff an option of a new trial which he can avoid by remitting the excess above the amount which the court considers reasonable and taking judgment based on that reduced amount.[7]

The crucial question to be first resolved is whether the trial court here erred in finding that the $6,500 award for plaintiff's personal injuries was excessive. Several criteria have been established to guide a trial court's review of a jury verdict.

1. "The problem of achieving fairness in assessing damages for personal injury is fraught with difficulty. Theoretical nicety is impossible. Under our judicial system, we rely primarily upon the good sense of jurors to determine the amount of money which will compensate an individual

---

[5] (1960), 10 Wis. (2d) 78, 102 N. W. (2d) 393.

[6] *Olson v. Siordia* (1964), 25 Wis. (2d) 274, 130 N. W. (2d) 827; *Baumgarten v. Jones* (1965), 26 Wis. (2d) 703, 133 N. W. (2d) 346.

[7] *Powers v. Allstate Ins. Co., supra,* footnote 5. *Spleas v. Milwaukee & Suburban Transport Corp.* (1963), 21 Wis. (2d) 635, 646, 124 N. W. (2d) 593, modified the *Powers* rule so as to apply the rule even where there is prejudicial error committed on the trial, but where such error is related directly to damages and where any prejudice affecting the jury verdict can be accommodated by applying the *Powers* rule.

for whatever loss of well-being he has suffered as a result of injury." [8]

2. "In actions sounding in damages merely, where the law furnishes no legal rule for measuring them, the amount to be awarded rests largely in the discretion of the jury, and with their verdict the courts are reluctant to interfere." [9]

3. "A jury may mistakenly assume (without supporting evidence) that there have been, or will be certain effects from an injury or fix compensation for sufficiently proved effects of injury at a figure which is beyond the range of reasonably debatable amounts. In a case where it is clear to the court that the amount awarded must necessarily reflect an allowance for the effects of injury not sufficiently proved or reflect a rate of compensation which is beyond reason, the court will declare the damages excessive. Where the question is a close one, it should be resolved in favor of the verdict." [10]

4. "In considering whether the jury's appraisal of damages for pain, suffering, and disability is excessive, we must of course view the evidence in the light most favorable to plaintiff." [11]

"The trial court, however, is not required to search out one or several isolated pieces of testimony, which standing alone might sustain the damages found by the jury, but rather must review all the evidence bearing on damages and then, viewed reasonably as a whole, consider the same in the light most favorable to the plaintiff." [12]

[8] *Makowski v. Ehlenbach* (1960), 11 Wis. (2d) 38, 41, 103 N. W. (2d) 907; *Olson v. Siordia, supra,* footnote 6, at page 283.
[9] 15 Am. Jur., Damages, p. 621, sec. 205; *Bethke v. Duwe* (1950), 256 Wis. 378, 384, 41 N. W. (2d) 277; *Makowski v. Ehlenbach, supra,* footnote 8, at page 42; *Olson v. Siordia, supra,* footnote 6, at page 283; see *Kablitz v. Hoeft* (1964), 25 Wis. (2d) 518, 525, 131 N. W. (2d) 346.
[10] *Makowski v. Ehlenbach, supra,* footnote 8, at page 42; *Olson v. Siordia, supra,* footnote 6, at page 284.
[11] *Kincannon v. National Indemnity Co.* (1958), 5 Wis. (2d) 231, 233, 92 N. W. (2d) 884; *Boodry v. Byrne* (1964), 22 Wis. (2d) 585, 126 N. W. (2d) 503; *Olson v. Siordia, supra,* footnote 6.
[12] *Boodry v. Byrne, supra,* footnote 11, at page 589; *Olson v. Siordia, supra,* footnote 6, at page 284.

5. "In analyzing the testimony as to the existence of any permanency of the injury or the likelihood that the injured person will endure future pain and suffering before recovery may be allowed therefor, there should be competent objective medical findings and the unsupported subjective statements of the injured party are not sufficient." [13]

6. ". . . a comparison with other verdicts at best can only be an imperfect analogy affording some guidelines to the solution but not necessarily determining the result." [14]

In addition to the above rules for reviewing personal-injury verdicts there is a further rule that is applied where the supreme court is asked to review a determination made by a trial court that a verdict is excessive. That rule is:

"Where a trial judge has reviewed all of the evidence and has found a jury verdict awarding damages to be excessive and has fixed a reduced amount therefor, and has determined that there should be a new trial on damages unless the plaintiff takes his option for a judgment on the reduced amount, this court will reverse his directions 'only if we find an abuse of discretion on the part of the trial court.' " [15]

This rule was amplified in *Boodry v. Byrne,* where it was stated:

"On appeal from a determination by the trial court that the found damages were excessive, this court will not find an abuse of discretion if there exists a reasonable basis for the trial court's determination after resolving any direct conflicts in the testimony in favor of plaintiff." [16]

---

[13] *Lucas v. State Farm Mut. Automobile Ins. Co.* (1962), 17 Wis. (2d) 568, 572, 117 N. W. (2d) 660; *Diemel v. Weirich* (1953), 264 Wis. 265, 58 N. W. (2d) 651.

[14] *Springen v. Ager Plumbing & Heating, Inc.* (1963), 19 Wis. (2d) 487, 493, 120 N. W. (2d) 692.

[15] *Lucas v. State Farm Mut. Automobile Ins. Co., supra,* footnote 13, at page 571, and cases cited therein.

[16] *Boodry v. Byrne, supra,* footnote 11, at page 589.

In applying these rules to the instant case we are handicapped considerably by the complete absence of any statement by the trial court of its reasons for its determination that the jury verdict of $6,500 for Mrs. Moritz's personal injuries is excessive. There is no analysis of the evidence and the trial court has not given the parties or this court the benefit of his observations bearing in mind that he not only sees the parties and other witnesses but hears their testimony. We can only read from the transcript.

"Because of the advantage of personal observation enjoyed by the trial judge, the rule has been evolved that where a trial court determines that damages are excessive, and orders a new trial for that reason, his order will be reversed and directions given by this court to enter judgment on the verdict only if we find an abuse of discretion on the part of the trial court." [17]

A trial court reviewing a personal-injury jury verdict and finding such a verdict excessive should state its reasons for its determination. In the absence of such an analysis this court on appeal must, as here, review the entire record as a matter of first impression and ascertain whether, in its judgment, the verdict is excessive. In so doing, this court, of course, applies the same criteria for determining whether or not a verdict is excessive as govern review of the verdict by the trial court in the first instance.

At the time of the trial, Mrs. Moritz was a widow, about sixty-eight years old, and had a life expectancy of 9.47 years. She was thrown against the left side of her automobile. She was able to step out of her car, talk to Erickson and then drive her car home unassisted. That night she noticed soreness in her neck, back, and left leg. She saw her physician, Dr. Milsen, for the first time two days later, and complained of pain in her neck, head, back, chest, and left leg. She

[17] *Makowski v. Ehlenbach, supra,* footnote 8, at page 44, and cases cited therein.

was given medicine and advised to apply heat. After seeing Dr. Milsen four times, her pains persisted and she was hospitalized on December 16th for a week. During that time she was examined by Dr. Albert Freedman, a specialist in orthopedics and surgery. X rays were taken. She visited Dr. Milsen about seven times through May 25, 1961, and did not see him again until July 11, 1963, just before the trial. Each time she had generally the same complaints as she had on the first occasion, and in addition, also mentioned experiencing headaches and dizziness.

As a result of his examinations, Dr. Milsen observed objective symptoms of ecchymosis (superficial bleeding) of the left hip, and muscle spasms in the lower lumbar area, over the cervical spine, and in the back of the neck. The X rays taken in December of 1960, disclosed that Mrs. Moritz had an arthritic condition and that the accident had caused a decrease of a normal cervical lordosis (flattening out of the normal forward curve of the neck). Both doctors testified that the arthritis was a pre-existing condition and that the accident did not cause any boney change. The doctors concluded from their examination and Mrs. Moritz's complaints that the accident aggravated or "lit up" the pre-existing arthritic condition.

On July 11, 1963, on her last trip to Dr. Milsen before the trial, Mrs. Moritz complained of pain in the back, neck, head, left knee, and tenderness in the back. She claimed that her movements were restricted, particularly bending. Any limitation of motion was not specifically described. Dr. Milsen found some spasm in the lumbar area and the cervical spine.

Dr. Freedman also took X rays in July of 1963, the only other time he examined Mrs. Moritz. These X rays showed that the neck curve was practically normal and that there had been no marked change in the arthritic condition since the last X rays were taken in December of 1960. Dr. Freedman testified that at the time of the second X ray

Mrs. Moritz actually "had a lot less arthritis than would be normal in a woman of sixty-eight." Dr. Freedman felt that the flare-up of the arthritic condition was "rather permanent in nature" while Dr. Milsen thought that the "chances" were that it was permanent. No percentage finding of permanent disability was made by either doctor.

Prior to the accident, Mrs. Moritz had no back problems and was able to do all her own housework and work a garden. She testified that after the collision she was unable to do all of her housework and it is undisputed that she hired two women to help her. However, the evidence is unclear as to exactly how much Mrs. Moritz was curtailed in her activity and as to what phase of the housework she was not able to perform. Outside of a cloth belt which she wore six weeks before discarding because she "was starting to get better," the only other treatment prescribed by either doctor was rest, heat, and medication. She was never placed in traction, never required physical therapy, and outside of her stint in the hospital, was not confined to bed. She did not suffer any fractures, or severe cuts.

The evidence taken as a whole and looked at most favorably to the plaintiff, does not support the jury verdict of $6,500 for the plaintiff's personal injuries.[18]

In essence the evidence establishes that the plaintiff, sixty-eight years of age, complains three years after the accident of a worsening of a pre-existing arthritic condition; that there has been no boney change in this period; that despite the "flare-up" of arthritis, her condition is still not as severe as is normal in someone her age; that there was a lack of

---

[18] "While we recognize that the jury's appraisal of damages should not be disturbed in the absence of error, it is nevertheless our duty to evaluate the testimony, and if the award is excessive even when viewed in the light most favorable to the plaintiff, it is our responsibility to so find." *Spleas v. Milwaukee & Suburban Transport Corp., supra,* footnote 7, at page 645, and cases cited therein.

hospitalization or confinement to bed except for a period of examination; that it is unclear exactly to what extent her activities have been curtailed.

The verdict is one of those relatively rare cases where the sum awarded by the jury is "beyond the range of reasonable amounts" and is excessive. Although the verdict is excessive the $3,500 amount fixed as reasonable by the trial court is within the range of reasonable amounts and his finding to this effect must be affirmed.

### Recovery for Nursing and Domestic Services.

The jury awarded appellant $1,500 for nursing and domestic services she required as a result of the accident. On respondents' motion after verdict, the trial court struck this answer and disallowed any recovery whatsoever.

There is no question but that one who is injured and requires domestic and nursing services is entitled to recover for the same "what is customarily charged for similar work" [19] and to the extent that there is proof that establishes this item of damages to a reasonable certainty.

On the record Mrs. Moritz did not sustain her burden of proof on this item of damages. There is absolutely no evidence of the customary charges for this kind of domestic work. Ann Bennett was not even called to testify, and Rose Kroll, who did testify, was never asked about the usual going rate for her services.

Even assuming that the customary charge was proved, the evidence was still insufficient to show the amount of time actually put in by the two women. Ann Bennett worked for Mrs. Moritz during a seven-month period. When asked how many days Ann Bennett had worked, appellant replied

[19] *Hommel v. Badger State Investment Co.* (1917), 166 Wis. 235, 245, 165 N. W. 20.

"Oh, I don't know. She worked so long, she was there different days." The most-concrete testimony of when she came to the house was at best confusing. Mrs. Moritz testified that she came "sometimes every other day," "sometimes three or four days" a week, and "sometimes couple hours every day, coming."

Rose Kroll worked for Mrs. Moritz for about two years. Appellant said that she "comes and goes." Rose Kroll, herself, claimed that she worked "[o]ff and on . . . sometimes twice a week, three times a week, you know. Whenever she needed me, something she couldn't do." Thus there was a complete failure to give even a reasonable estimate of the amount of time the two women actually worked for Mrs. Moritz.

The testimony regarding the specific tasks the two women performed for Mrs. Moritz was even more vague. There was conflict in the evidence as to how much each woman had been paid. No proof of a total payment was introduced. Rose Kroll said that she received "six, five, seven dollars" while Mrs. Moritz claimed she was paid ten or fifteen dollars a week.

While appellant clearly was entitled to some compensation for the household services she required as a result of the accident, the record demonstrates that the damages were not proved with any reasonable certainty. When damages are susceptible of precise proof or of estimation by someone having knowledge, the proof must be adduced in order to sustain the burden of showing the expenses.[20] This appellant failed to do, and since the trial court is not permitted to determine the value of personal services,[21] there was no error in disallowing the jury award.

---

[20] *Maslow Cooperage Corp. v. Weeks Pickle Co.* (1955), 270 Wis. 179, 70 N. W. (2d) 577.

[21] *Will of Gudde* (1951), 260 Wis. 79, 49 N. W. (2d) 906.

The trial court's order gave appellant Moritz judgment for the reduced award unless within twenty days she elected to accept an option of a new trial on damages only. This is the reverse of the procedure recommended in *Lucas v. State Farm Mut. Automobile Ins. Co.*[22] Mrs. Moritz should actually have been given the option to receive a new trial or take the reduced amount of the award. Accordingly, the judgment should be modified so as to permit the plaintiff an option to receive a new trial on all items of damages, including possible recovery for nursing and domestic services, or to take judgment including items of damage not involved on this appeal and also based on the $3,500 sum fixed by the trial court for personal injuries, which sum we have affirmed.

*By the Court.*—Judgment modified to give plaintiff an option to receive a new trial on all items of damages, or within twenty days of remittitur to take judgment in the sum fixed in the judgment from which this appeal was taken. Judgment, as modified, affirmed. No costs to be taxed on this appeal.

GORDON, J. (*dissenting*). I would uphold the jury's verdict insofar as it evaluated the plaintiff's personal injuries at $6,500.

There was evidence presented by the plaintiff and by two qualified medical witnesses. Their testimony contained proof of significant pain and disability and warranted the assessment as to damages made by the jury. The proof showed that as a result of the accident the plaintiff sustained the following: Backache, headache, dizziness, chest pain, leg pain, and aggravation of arthritis. She was hospitalized for a week.

---

[22] *Supra,* footnote 13.

The trial court offered no explanation to justify its reduction in the verdict. I believe that the record in the instant case supports the jury's conclusion as to the plaintiff's damages for her personal injuries. The finding of the jury should not have been disturbed.

I am authorized to state that Mr. Justice FAIRCHILD joins in this dissent.