BANNACH, Appellant, vs. STATE FARM MUTUAL AUTOMOBILE INSURANCE COMPANY and another, Respondents.

*April 10—May 6, 1958.*

For the appellant there was a brief by *Atwell & Atwell* of Stevens Point, and oral argument by *W. E. Atwell, Jr.*

For the respondents there was a brief and oral argument by *James H. Van Wagenen* of Stevens Point.

MARTIN, C. J.   The accident happened around noon on
December 12, 1955, in clear weather, on County Trunk Y
in the town of Hull, Portage county.  The road runs general-
ly northeast and southwest, has a bituminous surface 20 feet
wide and shoulders five and one-half feet wide.  Reference is
frequently made in the evidence to the Marshall driveway
which is on the east side of the road.  From that driveway
to the south the road is straight and level for 511 feet to a
bend.  On the day in question the road was icy and slippery.

According to plaintiff's testimony, at a point about 400
feet south of the Marshall driveway he was driving in a
northeasterly direction at about 20 to 25 miles per hour.  At
that point he reduced his speed by removing his foot from
the accelerator and about 200 feet south of the driveway he
started to put on his brakes, on and off continuously until
about 40 feet south of the driveway, where his car was struck
from the rear by the Fox car.

Bannach further testified his car had no directional signals
but had red brake lights which were working at the time of
the accident; that his car moved straight ahead in the right
lane of travel and had slowed to between five and 10 miles
per hour at the time of the impact.  The middle of the trunk
of his car was struck by the right front wheel of the Fox
car.  After the accident Bannach's car came to rest on the
northeast side of the Marshall driveway, facing southwest.

Plaintiff testified that he looked into his rear-view mirror
between 400 and 200 feet south of the point of collision, but
he did not see the Fox car; that there was nothing to obstruct
his view for a distance of 511 feet to the south from the drive-
way.  Plaintiff intended to turn into the Marshall driveway.
He did not give any signal of his intention to do so.  He
testified he was struck before he made his turn.

Fox was also driving northeasterly.  He testified the road
was very slippery; he was driving between 40 and 45 miles
per hour; he traveled 200 to 250 feet after rounding the bend

and then for the first time noticed the Bannach car about 200 feet ahead of him. He started to put on his brakes, "pumping them real slow," and slacked his speed, and he was 75 to 100 feet from the Bannach car when he realized Bannach was going to turn into the Marshall driveway; the Bannach car was about 50 feet from the driveway at that time, and Fox's car was traveling about 25 miles per hour. He testified the Bannach car was "halfway turned" into the driveway when his automobile collided with it. Fox testified that his right fender struck the left fender of the Bannach car; that he never saw Bannach's brake lights.

Fox could not estimate the speed of the Bannach car at any time prior to the collision and did not know whether Bannach increased or decreased his speed, but knew that he was catching up to him; that he started to put on his brakes when 100 feet to the rear of the Bannach car which was then about 100 feet from the place of collision. On cross-examination he gave the following testimony:

"*Q.* But for the last 100 feet prior to the collision, could you have controlled or stopped your car? *A.* No, I couldn't."

He further testified, as he had stated on adverse examination, that "When I noticed him between 75 and 100 feet, then I could see he was kind of slacking off and turning. Then I started pumping my brakes and every time I touched them, it started to slide a little, and I kept on going. I seen I could not pass him, and I hit his fender and bumper . . . ;" that he never attempted to pass the Bannach car; that there were no other vehicles going in either direction. He also testified, as he had on the adverse examination, to the effect that his car skidded every time he put on his brakes, and that he had to follow immediately behind the Bannach car because it was so slippery he could not stop.

The jury found Fox not negligent with respect to management and control and causally negligent with respect to speed.

The court found Bannach negligent as a matter of law in failing to give a signal of his intention to make a right turn, and the jury found such negligence causal. It found each party 50 per cent negligent.

The finding of 50 per cent responsibility to each party is so contrary to the facts and circumstances of this case that it requires a new trial under sec. 251.09, Stats.

The 50–50 apportionment clearly indicates that the jury did not consider plaintiff's testimony that his brake lights were in working order and that he activated them intermittently while he traveled the last 200 feet. Fox's negative testimony that he saw no brake lights does not overcome this. Under those circumstances the brake lights would have been visible from the first time Fox saw the Bannach car, because Fox testified the cars were then 200 feet apart and he was 200 to 250 feet north of the curve. Plaintiff's failure to give a turn signal constituted failure to warn defendant of *what* he intended to do, but the brake lights would be ample warning that he intended to do something, either slow or stop or turn right (there was no place to turn left). This is an issue that should be determined.

A question on Fox's lookout should have been submitted to the jury. By his own admission, he did not see plaintiff until he had proceeded 200 to 250 feet beyond the bend in the road. While he traveled the next 100 feet he observed that he was catching up to the other car and when he tried to apply the brakes his car skidded. He admitted that for the last 100 feet he had no control of his car. There was no evidence that the road was more slippery during the last 100 feet than before. If he had no control during that distance when, as he claimed, he had reduced his speed, what control did he have when he first saw the plaintiff and was traveling at 40 to 45 miles per hour? If he had seen the Bannach car when he came out of the curve, as it was possible for him to do, he would have had that much more opportunity to bring his car

under control. Driving on a slippery road requires not only such a reduction in speed as the statute contemplates, but also requires the maintenance of an efficient lookout.

*By the Court.*—Judgment reversed, and cause remanded for a new trial.

HALLOWS, J., took no part.