ZARTNER, Respondent, v. SCOPP and another, Appellants.

*September 8—October 5, 1965.*

For the appellants there were briefs by *Kivett & Kasdorf*, attorneys, and *Alan M. Clack* of counsel, all of Milwaukee, and oral argument by *Mr. Clack*.

For the respondent there was a brief by *Hippenmeyer & Reilly* of Waukesha, and oral argument by *William F. Reilly*.

Currie, C. J.   The appellants-defendants contend that the causal negligence of plaintiff Zartner was as a matter of law at least equal to that of defendant Scopp, and, therefore, the judgment should be reversed and the complaint be dismissed.  If the court decides this contention adversely to appellants, they then request a reversal and new trial on the following alleged grounds of prejudicial error :

(1)   The jury's finding that Scopp's negligence was causal with respect to failure to have turned on his headlights has no support in the evidence.

(2)   Likewise the jury's finding that Scopp's negligence was causal with respect to lookout also cannot be permitted to stand.

(3)   Zartner's negligence as to the manner in which he made a left turn was causal as a matter of law.

(4)   The separate findings of causal negligence on the part of Scopp as to lookout, management and control, and speed are duplicitous, thereby rendering the jury's comparison of negligence based thereon invalid.

(5)   The trial court erroneously failed to give instructions requested by defendants.

(6)   The trial court's error in permitting the hearsay statement of a witness to be read to the jury by plaintiff Zartner's counsel was not cured by the trial court instructing the jury to disregard it.

In considering appellants' assignments of error which call for review of the evidence, it is only necessary that we consider that part of the testimony and evidence which sustains the verdict.[1]

### Apportionment of Negligence.

With this rule in mind we first will consider appellants' contention that they are entitled to a reversal of the judgment and dismissal of the complaint because Zartner's causal negligence was at least equal to that of Scopp.

Grandview is a public street extending in a northerly and southerly direction. In the block where the accident occurred it is 38 feet six inches wide, has no curbs, and has pavement in the center wide enough for one north and one south traffic lane. On each side between the pavement and the curbline there is gravel. The accident occurred approximately 350 to 400 feet north of the intersection of Grandview and Summit avenue. On the evening of the accident the pavement was dry.

Zartner testified as follows: He was operating his 1957 Ford two-door sedan in a southerly direction on Grandview. When about 200 feet north of the Eagles Club he put on his directional lights to indicate a left turn while traveling at a speed of 15 to 20 miles per hour. He was then traveling in the middle of the west paved traffic lane with the left side of his car two or three feet to the west of the center line. As he approached the Eagles Club driveway he brought his car to a complete stop. He looked to the south and "looked down the road and didn't see nobody, and made my turn, and there was a crash." At time of the collision only two or three feet of his car were east of the center line of the street. When

---

[1] *Jensen v. Heritage Mut. Ins. Co.* (1964), 23 Wis. (2d) 344, 348, 127 N. W. (2d) 228; *Sturm v. Simpson's Garment Co.* (1956), 271 Wis. 587, 590, 74 N. W. (2d) 137.

he stopped his car preparatory to making the left turn he could see a distance of 300 feet to the south and could see cars parked on both sides of the street.

Scopp had approached Grandview from the east on Summit avenue in his 1960 Mercury automobile and made a wide right-hand turn onto Grandview. The car muffler had come off earlier in the day and Scopp had placed it in the car trunk. The attention of several disinterested witnesses stationed along Grandview between Summit and the Eagles Club was attracted by the loud noise made by Scopp's car. Although the speed limit on Grandview was 25 miles per hour his speed was estimated as high as 55 miles per hour as he proceeded north on Grandview. As he turned the corner his car swung over on the west side of the street and proceeded north on the gravel before turning into the north traffic lane. After turning into its proper traffic lane the car fishtailed, *i.e.,* its rear end swayed. The car was in its proper traffic lane by the time it passed the car of witnesses who were parked on the west side of Grandview about half way between the corner and the Eagles Club. Scopp did not see the activated directional lights of the Zartner car, but saw the headlights of this car a block or so away at the time he turned onto Grandview. When he saw the Zartner car start to make its left turn Scopp applied his brakes hard but did not attempt to turn to either side. The Scopp car laid down 61 feet of skid marks prior to the collision.

Appellants cite the following statement of this court in *Guptill v. Roemer:* [2]

"We might observe that the case at bar is one of three appeals decided by us on this assignment involving motor-vehicle-accident cases in which a driver attempted, as did plaintiff Guptill, to make a left turn in the path of an oncoming vehicle under circumstances where a collision was certain

[2] (1955), 269 Wis. 12, 19, 68 N. W. (2d) 579, 69 N. W. (2d) 571.

to ensue if the latter vehicle continued in its same lane of travel and at its same speed. It is difficult for us to understand how a conscientious jury under such circumstances could attribute the smaller percentage of negligence to the driver making the left turn whose act precipitated the situation resulting in the collision."

However, in the *Guptill Case,* this court did not rule as a matter of law that the left-turning driver was at least as negligent as the other driver, but held the apportionment of 90 percent of the total negligence to the other driver was so against the great weight and clear preponderance of the evidence as to warrant ordering a new trial in the interest of justice. There the accident occurred at a rural intersection while the instant collision occurred on a city street having a speed zone of 25 miles per hour. Scopp's greatly excessive speed testified to by several witnesses was flagrant negligence. While Zartner's total failure of lookout undoubtedly greatly contributed to the cause of the collision, we are of the opinion that the apportionment of negligence was peculiarly for the jury, and should not be set aside by us. See *Grana v. Summerford* [3] where we rejected the contention that a left-turning driver's negligence in turning into a private driveway in the path of an approaching car from the opposite direction was at least 50 percent of the total negligence.

## *Scopp's Lack of Headlights.*

Although the accident occurred long after one-half hour after sunset, Scopp was operating his car with only the parking lights turned on, which was a violation of sec. 347.06, Stats. Because the evidence establishes that the roadway of Grandview from the Eagles Club south to Summit avenue was well lighted, and Zartner testified he could see all objects thereon for a distance of 300 feet, appellants contend there

---

[3] (1961), 12 Wis. (2d) 517, 107 N. W. (2d) 463.

is no support for the jury's finding that Scopp's negligence with respect to headlights was causal.

The fact that there was sufficient lighting available on the street so that an attentive driver could see unlighted objects for a distance of 300 feet does not lead to the conclusion that the direct beam of light projected by automobile headlights would not have a definite warning effect. There is little question that headlights, in addition to enabling the driver to see ahead, have a warning function which permits others to see the approaching car.[4]

We determine that a jury issue was presented as to whether Zartner would have seen the approaching Scopp car, if its headlights had been turned on, in time for him to have averted the accident.

### Scopp's Lookout.

The jury found Scopp causally negligent as to lookout. Appellants concede that he was negligent in this respect, but contend that this negligence was not causal. The evidence at the trial established that Scopp did not see Zartner's activated left-turn direction lights.

The question of whether Scopp's failure to see Zartner's left-turn direction signal was causal is answered by this court's statement in *Behringer v. State Farm Mut. Automobile Ins. Co.:*[5]

"The jury could well have found that, if Behringer had seen such flashing directional lights, he should have slowed down his speed so as to have his car under such control that he could have avoided a collision if Leffel did turn left in Behringer's path. However, the jury could also reasonably have concluded that Behringer had the right to continue at his existing rate of speed on the assumption that Leffel would

---

[4] See Anno. 67 A. L. R. (2d) 118, 131.
[5] (1959), 6 Wis. (2d) 595, 599, 95 N. W. (2d) 249.

not violate the law by turning left directly into Behringer's traffic lane. The purpose of activating directional signal lights, so as to indicate a left turn, usually is to warn traffic to the rear proceeding in the same traffic lane that the driver will be slowing down or stopping so as to permit approaching traffic in the opposite traffic lane to clear the intersection before the left turn will be begun. Because the jury could reasonably have arrived at either of these two conclusions, whether Behringer's negligent lookout was causal presented a jury issue. It cannot be resolved as a matter of law contrary to the jury's express finding."

It seems clear, therefore, that it was within the jury's province to find that if Scopp had seen Zartner's directional lights he could have reduced his speed so as to have his car under such control that he might have avoided the collision.

### Manner of Zartner's Left Turn.

Although Zartner was attempting to make a left turn into a private driveway, sec. 346.32, Stats., required him to make it in the same manner as he would at a regular highway intersection as provided in sec. 346.31 (3), there being no evidence that the turn could not be so made. Sec. 346.31 (3) (b) provides:

"The intersection shall be entered in the lane of approach and, whenever practicable, the left turn shall be made in that portion of the intersection immediately to the left of the center of the intersection."

Zartner admitted that in making his left turn his car was slightly to the south, or right, of the center of the intersection of the Eagles Club private driveway with Grandview. Because of this admitted statutory violation the trial court answered "Yes" to that question of the verdict which inquired whether Zartner was negligent in the manner of making a left turn.

Appellants contend that this negligence of Zartner's should be held to be causal as a matter of law and that the jury's answer of "No" to the corresponding causation question should be set aside. We find no merit in this contention because the jury could well have concluded that the collision would have occurred even if Zartner had turned left just to the north of the center of the intersection. Appellants urge that Zartner's obvious disregard of approaching traffic and failure to exercise reasonable judgment are also proper aspects of negligence in respect to the manner of his left turn. However, the trial court's instructions to the jury make it clear that this aspect of making a left turn was not presented to the jury when they passed on this causation question.

Sec. 346.34 (1), Stats., provides:

"No person shall turn a vehicle at an intersection unless the vehicle is in proper position upon the roadway as required in s. 346.31, or turn a vehicle to enter a private road or driveway unless the vehicle is in proper position on the roadway as required in s. 346.32, or otherwise turn a vehicle from a direct course or move right or left upon a roadway unless and until such movement can be made with reasonable safety."

Whether Zartner in making a left turn violated the above provision requiring him not to do so unless the same could "be made with reasonable safety" involved an exercise of judgment on his part which could be made only after he had first sighted the approaching Scopp car.[6] Because Zartner never saw the Scopp car prior to the collision, Zartner was never presented with any opportunity to form a judgment as to whether he could safely pass in front of the approaching Scopp car. Thus Zartner's negligence in turning directly

---

[6] *Grana v. Summerford* (1961), 12 Wis. (2d) 517, 523, 107 N. W. (2d) 463, would indicate that the element of calculation and forming a judgment as to whether the turn can be made in safety is properly an element of lookout and not of manner of making a left turn. See Comment, Wis. J I—Civil, Part I, 1354.

into the path of the Scopp car was that of failure of lookout and not in manner of making a left turn.

Appellants rely on the case of *DeBaker v. Austin* [7] in support of their position that Zartner was causally negligent as to the manner in which he made his left turn. In the *DeBaker Case* a left-turning driver was found to be causally negligent as a matter of law in the manner in which he negotiated his turn. This negligent left turn resulted in a collision with an approaching vehicle. The turning driver in that case initially saw the approaching car before attempting his turn, but failed to look again prior to making the turn. The very fact that the driver in *DeBaker* saw the other vehicle and *then* proceeded to make the turn clearly distinguishes it from the facts before us. In *DeBaker* there were clearly issues as to lookout and failure to exercise proper judgment. In the instant case Zartner was never aware of any approaching traffic, so could hardly be said to have exercised rash judgment in making his turn.

The following statement appearing in *Reynolds v. Madison Bus Co.* [8] is apposite:

"So also where the driver of the car is completely negligent as to lookout and because of this negligence wholly fails to see another car or to take any steps to avoid a collision the sole negligence is in respect of lookout."

At first blush this holding, that the jury is not required to pass on the issue of whether Zartner violated the above-quoted provision of sec. 346.34 (1), Stats., with respect to manner of making a left turn because of his total failure of lookout, might appear inconsistent with our holding in *Lewis v. Leiterman* [9] where we held that violation of right-of-way must be submitted to the jury as well as lookout, even though in that case for all practical purposes there was a total failure

[7] (1939), 233 Wis. 39, 287 N. W. 720.
[8] (1947), 250 Wis. 294, 306, 26 N. W. (2d) 653.
[9] (1958), 4 Wis. (2d) 592, 599, 91 N. W. (2d) 89.

of lookout by the driver who entered the arterial in the path of an oncoming car. The distinction between right-of-way and the instant turning case is that we construe the right-of-way statute (sec. 346.18) as imposing the duty of yielding right-of-way regardless of lookout.[10]

## Form of Verdict.

Appellants renew their objection made at the trial that the verdict was duplicitous with respect to the elements of alleged negligence on the part of Scopp, viz., speed, lookout, and management and control.

Scopp was clearly traveling at an excessive rate of speed as testified to by a number of witnesses. In not observing that Zartner's car was stopped with its directional lights on, the issue of negligent lookout was clearly present. Scopp's reckless turn when entering Grandview which carried him onto the gravel parking lane to the west of the pavement, and his continuing in that lane for some distance, clearly raised an issue of management and control. It may well have been during Scopp's traveling up the wrong lane that Zartner looked down the proper lane to see if a vehicle was approaching. We conclude that the verdict as framed was not duplicitous.

## Instructions to Jury.

Appellants raise two main points in respect to the instructions they requested which were not given to the jury. They

---

[10] Sec. 346.18 (7), Stats., enacted after occurrence of the instant accident, provides: "The operator of any vehicle intending to turn to the left into an alley or private driveway across the path of any vehicle approaching from the opposite direction shall yield the right of way to such vehicle." Thus this statute does impose a duty on the left-turning driver independent of his lookout.

contend that the trial court's failure to instruct (1) as to the manner in which a left turn should be made and (2) as to the elements of negligent lookout in a left turn, were prejudicial.

The trial court admitted failure to instruct as to the proper position for a left-hand turn. However, the court felt that the error was not prejudicial, presumably because it had determined Zartner negligent as a matter of law in this respect. The jury, however, failed to find that this negligence was causal, and appellants contend that the absence of an instruction left the jury in the dark as to the elements of the negligence. In view of the facts before us, aside from the question of lookout, it is apparent that the only negligence that can be seriously complained of in respect to the manner of Zartner's left-hand turn was his turning a few feet south of the center of the intersection of the driveway and Grandview. It is most unlikely that an instruction as to the proper method of making a left-hand turn would have changed the jury's estimate of the causal effect of this improper turn. Accordingly, the error was not prejudicial to defendants, and, therefore, was not grounds for a new trial.[11]

In regard to Zartner's negligent lookout, the court instructed the jury as to the general elements of a proper lookout, Wis. J I—Civil, Part I, 1055, but did not give the jury the instruction requested by defendants, Wis. J I—Civil, Part I, 1100, which specifically concerns turning into private driveways or intersections. Instruction No. 1100 includes an additional requirement, not included in No. 1055, that a turning motorist must exercise reasonable judgment in calculating the time required to safely enter the intersecting private driveway. Appellants contend that omitting this additional requirement is fatally prejudicial. They cite the

[11] Sec. 274.37, Stats.

case of *Vanderhei v. Carlson* [12] in support of their position. That case involved an accident between an automobile and a pedestrian. The court instructed the jury with respect to the duty of the driver to keep a proper lookout, but when instructions were given in relation to the pedestrian's lookout, the court merely stated, "I have already instructed you in regard to that." By a special verdict the jury found the pedestrian not negligent as to lookout. The driver of the car involved complained that omitting the instruction as to a pedestrian's duty of lookout was fatally prejudicial. This court agreed and ordered a new trial. The seriousness of the error in the *Vanderhei Case* is apparent because the jury wholly failed to find the pedestrian negligent and a different result might well have followed if the jury had been properly instructed.

As previously pointed out herein, in considering the failure of the jury to find Zartner's negligence causal in the manner in which he made his left turn, Zartner's negligent lookout in failing to see Scopp's car prior to impact eliminates from the case the element of Zartner exercising judgment as to whether he could safely make the turn in front of the approaching Scopp vehicle. Therefore, no prejudice resulted from failing to give this last-mentioned requested instruction.

### *Evidentiary Ruling.*

In the process of the redirect examination of a witness, Douglas McCaffery, Scopp's counsel produced a statement signed by the witness for the purpose of refreshing the memory of the witness concerning the lights on Scopp's car. Over objection by Scopp's counsel, counsel for Zartner then was allowed to read the entire statement to the witness in the presence of the jury. The document included a statement by the witness that Scopp was traveling "far in excess of 25

[12] (1957), 275 Wis. 300, 81 N. W. (2d) 742.

miles per hour." Counsel for defendants had not questioned the witness about Scopp's speed so that the reading of this part of the statement could not be justified on the basis of impeaching the witness' testimony. After the reading of the statement by counsel for Zartner, the trial court granted the motion of Scopp's counsel to strike the same and instructed the jury to disregard it. Appellants urge that the prejudicial nature of the error was not cured by the granting of the motion to strike.

Four other witnesses testified that defendant was traveling at an excessive speed. The evidence was so overwhelming in this regard that appellants do not even contest the finding that Scopp was negligent as to speed. As this court said in *Holtz v. Fogarty:* [13]

"Errors committed in the course of a trial will not operate to disturb a judgment on appeal unless it appears pretty clearly that had they not occurred, the result might probably have been more favorable to the party complaining. . . ."

In light of the overwhelming evidence in regard to Scopp's speed we deem it clear that, even if the alleged error had not occurred, the result would not have been more favorable to defendants. Therefore, we find no prejudice.

*By the Court.*—Judgment affirmed.

---

[13] (1955), 270 Wis. 647, 650, 72 N. W. (2d) 411.