MOOSE, by Guardian *ad litem,* and another, Plaintiffs and Respondents, v. MILWAUKEE MUTUAL INSURANCE COMPANY, Defendant and Appellant: WESTERN STATES MUTUAL INSURANCE COMPANY, Defendant and Respondent. [Case No. 73.]

WASIELEWSKI, by Guardian *ad litem,* and another, Plaintiffs and Respondents, v. SAME, Defendant and Appellant: SAME, Defendant and Respondent. [Case No. 74.]

GAUDYNSKI and wife, Plaintiffs and Respondents, v. SAME, Defendant and Appellant: SAME, Defendant and Respondent. [Case No. 75.]

BOGUSZEWSKI, by Guardian *ad litem,* and another, Plaintiffs and Respondents, v. SAME, Defendant and Appellant: SAME, Defendant and Respondent. [Case No. 76.]

HERO, by Guardian *ad litem,* and another, Plaintiffs and Respondents, v. SAME, Defendant and Appellant: SAME, Defendant and Respondent. [Case No. 77.]

*Nos. 73–77. Argued November 26, 1968.—Decided December 20, 1968.*

(Also reported in 163 N. W. 2d 183.)

121

For the appellant there was a brief by *D. J. Regan*, attorney, and *Thomas J. Regan* of counsel, both of Milwaukee, and oral argument by *D. J. Regan*.

For the respondents Moose, there was a brief by *Kersten & McKinnon*, attorneys, and *Arlo McKinnon* of counsel, all of Milwaukee; for the respondents Wasielewski, by *Erbstoeszer, Cleary & Zabel*, attorneys, and *Patrick T. McMahon* of counsel, all of Milwaukee; for the respondents Gaudynski, by *Karius, Kmiec & Kay*, attorneys, and *Marjan R. Kmiec* of counsel, all of Milwaukee; for the respondents Boguszewski, by *Frinzi, Catania & Neubecker*, attorneys, and *Nicholas C. Catania* of counsel, all of Milwaukee; and for the respondents Hero, by *Meldman & Kahn*, attorneys, and *Clifford K. Meldman* of counsel, all of Milwaukee, and oral argument by *Arlo McKinnon, Clifford K. Meldman*, and *Patrick T. McMahon*.

CONNOR T. HANSEN, J.   The collision which produced this litigation occurred January 28, 1966, at about 8 p. m. on Highway 41 south of the village of Germantown. Highway 41 is a four-lane highway and the north and south lanes are separated by a median strip.

Runion was alone in his automobile (with the headlight on the driver's side out) and was traveling south on the wrong side of the highway on the inner lane (nearest the median strip). Crane was traveling north on the same inner lane and on the proper side of the highway. Four of the injured plaintiffs and the deceased, Judith Gaudynski, were passengers in the Crane automobile.

Western States Mutual, the insurer of Runion, admitted liability and causation and was excused from further participation in the trial. Also, prior to the trial the amount of damages for the deaths of Crane and Gau-

dynski were stipulated and their representatives did not participate in the trial. Counsel for all the parties further stipulated that no claim would be made individually against Crane or Runion above the policy limits.

Trial was had to a jury in January, 1968. The trial court submitted the cause to the jury by an ultimate fact verdict. In that verdict the trial court found Runion causally negligent. The trial court also found Crane negligent. This finding was based on the uncontroverted evidence that Crane was traveling 60 miles per hour in a 55 miles per hour speed zone. The jury found Crane to be causally negligent.

No appeals are taken from the assessment of damages.

The issues in these cases all relate to: (1) the application of the rule of "presumption of exercise of due care" in a situation where the driver is killed (Crane), and (2) the use of the ultimate fact verdict in these particular cases.

I.

The appellant argues that it was entitled to an instruction of due care accorded a deceased party.

This presumption is a limited one which is not evidence, and is sufficient only to place upon the other party the risk incidental to a failure to come forward with such testimony as may be in his control. It involves no rule as to the weight of evidence necessary to meet it. When evidence is introduced which would support a jury finding contrary to the presumption, the presumption is eliminated and drops out of the case entirely and no instruction to the jury should be given upon the subject.[1]

The ultimate fact verdict contained the usual question as to the negligence of Crane. The trial court properly

[1] *Theisen v. Milwaukee Automobile Mut. Ins. Co.* (1962), 18 Wis. 2d 91, 100, 118 N. W. 2d 140, 119 N. W. 2d 393; *Newberger v. Pokrass* (1967), 33 Wis. 2d 569, 575, 148 N. W. 2d 80.

answered this question, "Yes" because Crane was exceeding the lawful speed limit. While it is not essential that the trial court answer the negligence question in the affirmative in order to eliminate the presumption, having done so, the presumption dropped out of the case.

The appellant contends that the presumption that a deceased exercised due care for his own safety presumes due care as to each possible element of negligence, *i.e.*, speed, lookout, management and control; and that the trial court should give the instruction as to those elements which have not been rebutted.

We are of the opinion that the foregoing would constitute an improper application of the rule. The "exercise of due care for one's own safety" is an entity in itself and is rebutted by any negligence of the deceased. A person is not exercising due care for his own safety if he is negligent in any respect. *Brunette v. Dade* (1964), 25 Wis. 2d 617, 131 N. W. 2d 340.

## II.

The appellant further contends that the negligence of Crane as to speed was not causal; that it was error for the trial court not to so instruct the jury; that the finding by the trial court that Crane was negligent as to speed influenced the ultimate determination by the jury; and that therefore the trial court should have submitted separate questions as to lookout and management and control.

Two of the questions contained in the verdict are as follows:

Question No. 3 asked:

"At and immediately before the auto collision of January 28, 1966, was Roger Crane negligent?

"ANSWER:     Yes

"(Answered by the Court)"

Question No. 4 asked:
"Was such negligence a cause of the collision?
                    "ANSWER:          Yes"

[By the Jury]

The appellant urges that submission of such a verdict to the jury was highly prejudicial to the case of Crane. We do not concur in this assertion, nor do we believe the trial court should have instructed the jury that the negligence of Crane as to speed was not causal. The use of the ultimate fact verdict in automobile negligence cases is an acceptable practice in this state.

An examination of the record reveals that the trial court gave several instructions to impress the jury that the cause question was for the jury to determine. The jury was also instructed that the finding by the court that Crane was negligent as to speed should not influence it "in any degree in determining whether Roger Crane was or was not negligent in some other or additional respects . . . ."

After some discussion with counsel in chambers, the trial court gave the jury the following instruction:

"I will give you this additional instruction: In answering the question of the Special Verdict as to whether the negligence of Roger Crane was a cause of the collision, Question 4, you will consider not only his negligence as to speed as found by the Court, but also his negligence as to lookout or management and control, if you have found Roger Crane was negligent as to lookout or as to management and control in the operation of the vehicle he was operating at the time of the collision."

Although the trial court found Crane negligent as a matter of law, it clearly limited that finding to Crane's speed and instructed the jury on other possible negligence of Crane as to lookout and management and control. In

*Moritz v. Allied American Mut. Fire Ins. Co.* (1965), 27 Wis. 2d 13, 20, 133 N. W. 2d 235, this court upheld an ultimate fact verdict though faced with a somewhat similar argument. In *Moritz* we determined the ultimate fact verdict to be nonprejudicial even though the jury was not cautioned that no extra weight was to be accorded the finding of negligence by the trial court.

In the cases now under consideration, the instructions to the jury included several statements of caution. Crane also had the benefit of the emergency instruction.

"To conclude that a jury has placed improper weight on a finding by the trial court, it must appear from all the facts, and the record taken as a whole, that such influence could be the only explanation for the negligence apportionment." *Moritz, supra,* at 19, 20.

An examination of the record leads us to the conclusion that there is ample credible evidence to support the verdict of the jury.

"It is well established that a jury's findings as to negligence apportionment will be sustained if there is any credible evidence which, under any reasonable view, supports such findings. . . . This is especially true where, as here, the jury's findings have been approved by the trial court. . . ." *Berg v. De Greef* (1967), 37 Wis. 2d 226, 231, 155 N. W. 2d 7.

There was evidence that the accident occurred on a clear night and that there were no significant contours in the highway. Crane and Runion were traveling head on in the same inner lane of the highway.

Barbara Wasielewski, who sat in the front seat of the Crane car between Crane and another passenger, testified that she saw the single-lighted Runion car when "It was about 150 feet away." Then she "leaned forward and . . . pointed toward the oncoming car. . . . Roger [Crane] continued to go straight and did not apply his brakes." "I noticed that Roger continued going straight.

He did not slow down or pull over to the outer lane." She also testified that there were no cars in the vicinity of the Crane car other than Runion's.

Miss Wasielewski was the only passenger in the Crane car who could recall anything about the sequence leading up to the collision.

Thomas Schwartzburg was driving his car north on U. S. Highway 41 about a half a block ahead of the Crane car. Schwartzburg sighted the single light of the Runion car when it was about 550 feet ahead of Schwartzburg. At the time the witness first saw the single light he was in the inner lane coming back into the outside lane. When Runion's car was 250 feet ahead of Schwartzburg, Schwartzburg was in the outer lane. At this point Schwartzburg recognized the single light ahead as a car and started to pull out onto the shoulder and slowed down almost to a stop. As the Runion car passed, Schwartzburg looked in the rearview mirror and witnessed the accident. He testified that the Crane car did not apply its brakes or deviate into the outer lane.

Susan Harnischfeger sat on the right front side of the Schwartzburg car. She testified that she first saw the light when it was 650 feet ahead. She recognized it as a car when it was 150 feet away.

James H. Anderson was sitting in the rear right corner of the Schwartzburg car. He first noticed the Runion car when it was about 100 to 150 feet ahead.

Dennis Ackeret was traveling north on U. S. Highway 41 and pulled out into the inner lane to pass some slower cars. This maneuver placed him directly behind the Crane car and about five car lengths back of Crane before the accident. When he first saw the light of what turned out to be the Runion car, it was about a half a block *ahead of Crane*. Ackeret testified that Crane's brake lights did not go on and that Crane did not move to the right until just a split second before the accident. Ackeret heard no squealing of brakes before the impact.

Roy Geenen, who was in the left-hand side of the rear seat of the Ackeret car, testified that he first saw the Runion car when it was 150 feet ahead of the Crane car.

Robert Berkopec was traveling south on U. S. Highway 41 (on the proper side of the median strip) and first noticed the Runion car when it was on a crossover portion of the median strip, about a mile north of where the accident occurred. As Berkopec passed the Runion car, Runion began driving south on the northbound lanes of U. S. Highway 41. Berkopec testified that as the Runion car proceeded south in the inner lane it confronted about eight cars going north in the outer lane without incident.

David Schmid was seated in the front seat of the Berkopec car and testified that Runion went past about six to eight cars before the accident. He testified that Runion was traveling over fifty miles per hour. Schmid did emphasize that the Runion car came no closer to the eight northbound cars "than if two cars were driving on a two-lane highway."

From a review of the record, it is clear that there is credible evidence to support the findings of the jury, and the judgments of the trial court are therefore affirmed.

*By the Court.*—Judgments affirmed.