KLINZING, Administrator of the Estate of Lawrence. J. Hammang, Appellant, v. HUCK and another, Respondents.

*No. 30. Argued December 2, 1969.—Decided January 9, 1970.*
(Also reported in 173 N. W. 2d 159.)

460

For the appellant there were briefs by *Whyte, Hirschboeck, Minahan, Harding & Harland,* attorneys, and *Edward D. Cleveland* and *Michael T. Hart* of counsel, all of Milwaukee, and oral argument by *Mr. Hart.*

For the respondents there was a brief by *John P. McGalloway, Sr.,* attorney, and *William D. McGalloway* of counsel, both of Fond du Lac, and oral argument by *John P. McGalloway, Sr.*

WILKIE, J. The first issue raised on this appeal is whether the trial court erred in refusing to give an instruction based on the presumption of due care given to the deceased Hammang, or put another way, the issue is whether there is credible evidence of Hammang's negligence so as to remove that presumption from this case.

The appellant here, as in *Moose v. Milwaukee Mut. Ins. Co.,*[1] argues that an instruction of due care accorded to a deceased party should have been given.

In that case, this court said:

"This presumption is a limited one which is not evidence, and is sufficient only to place upon the other party the risk incidental to a failure to come forward with such testimony as may be in his control. It involves no rule as to the weight of evidence necessary to meet it. When evidence is introduced which would support a jury finding contrary to the presumption, the presumption is eliminated and drops out of the case entirely and no instruction to the jury should be given upon the subject.

". . .

"The appellant contends that the presumption that a deceased exercised due care for his own safety presumes due care as to each possible element of negligence, *i.e.,* speed, lookout, management and control; and that the trial court should give the instruction as to those elements which have not been rebutted.

"We are of the opinion that the foregoing would constitute an improper application of the rule. The 'exercise of

[1] (1968), 41 Wis. 2d 120, 163 N. W. 2d 183.

due care for one's own safety' is an entity in itself and is rebutted by any negligence of the deceased. A person is not exercising due care for his own safety if he is negligent in any respect. . . ." (Citations omitted.) [2]

Thus, in order for this court to determine whether an instruction based on this presumption should have been given in the instant case, it is necessary to review the record to see if there is *any* evidence of Hammang's negligence which would rebut this presumption.

What then are the particular facts surrounding this accident?

On the night of the accident the Hammangs, who lived east of Fond du Lac, took their fifteen-year-old son to a teen-age dance in the city. Then they went to the annual "Feather Party" held at the Elks Club in Fond du Lac, arriving there shortly after 7 p. m. They had to wait for another couple who were going to meet them for dinner. While waiting, both Mr. and Mrs. Hammang had two or three martinis and during dinner the two couples consumed a bottle of wine. After dinner and for the remainder of the evening, the Hammangs played bingo. At about 11:45 p. m. they stopped playing bingo and went to the bar of the Elks Club to wait for their son who was to meet them there after the dance. During this wait Hammang had a highball. When their son arrived, they left for home.

A waitress at the Elks Club testified that she spoke to Hammang before he left and he did not show any indication of being under the influence of intoxicating liquor. Both Hammang's wife and son also testified that he walked, talked and drove in a normal manner and showed no signs of intoxication.

After leaving the Elks Club, the Hammangs drove their son home. On the way, they passed the Silver Moon

[2] *Id.* at pages 124, 125. *See also Ernst v. Greenwald* (1967), 35 Wis. 2d 763, 775, 776, 151 N. W. 2d 706; *Voigt v. Voigt* (1964), 22 Wis. 2d 573, 126 N. W. 2d 543.

tavern and, according to the deceased's wife, they remembered they had not put 25 cents into the football pool held at the tavern. However, they didn't stop at this time because their son wanted to get home to watch a television program. They drove the son home and immediately turned around and headed back to the Silver Moon in a westerly direction.

Hammang was negotiating a left turn into the driveway of the Silver Moon when his car was struck on the right side by the car driven by the defendant coming from the west. Hammang died shortly thereafter from the injuries he received.

Hammang's wife testified that prior to the collision she could not remember seeing Huck's car. She also testified that she did not know if her husband had turned on his turn signals prior to making the left turn but thought he had "because he always did."

Huck was called adversely and testified that at the time of the accident he was eighteen years old and was driving his father's new 1962 Buick with power brakes and steering. He was headed east on his way home to Taycheedah after being at a party. He had had about five beers to drink during the course of the evening. Huck also testified that he had not passed any cars prior to the collision and that he was traveling at a speed of approximately 45 to 50 miles per hour.

Huck testified that when he first saw the Hammang car it had already crossed the center line and was in a fairly sharp left turn. Huck immediately applied his brakes and left skid marks of approximately 152 feet and proceeded 50 feet further east after the impact. He made no attempt to turn either left or right because, according to him, there were two cars in the Hammang lane proceeding west a short distance in front of the Volkswagen and there was another car a short distance behind the Hammang car. Huck was not asked, nor did he testify to seeing Hammang's turn signals flashing.

Two witnesses who were in a car traveling a short distance behind the Huck car contradicted this testimony in several material respects.

Both Reuben Hawkins, the driver of the following car, and John Jetzer, the front seat passenger, testified on behalf of the plaintiff.

Jetzer testified that just prior to the accident, the Huck car passed the Hawkins' car at a high rate of speed and as it returned to the proper lane of traffic it weaved somewhat. Jetzer estimated the speed of the Huck car to be approximately 80 miles per hour.

He also testified that the Hammang car was not following two other cars nor was there a car immediately following it. According to Jetzer there were other cars following Hammang but they were well to the rear of the Volkswagen. When asked if he saw turn signals on the Volkswagen he replied: "I'm not sure. . . . I think I saw an extraneous light, that is other than the headlights, but I'm not sure."

Reuben Hawkins, the driver of the car following Huck, corroborated most of Jetzer's testimony. He testified that he was approximately one-half mile from the point of the collision when Huck passed him. He estimated Huck's speed at at least 60 miles per hour and accelerating, and observed a swerving motion from Huck's car as it passsed. He also testified that he saw no indication of any other cars coming from the east.

Professor A. H. Easton, an expert in accident reconstruction, also testified on behalf of the plaintiff. In response to a hypothetical question, Professor Easton testified that in his opinion, the speed of Huck's car must have been 62 to 70 miles per hour at the time he applied his brakes.

The defense produced no witnesses and after the plaintiff rested, the case was submitted to the jury.

Respondents argue that on the record Hammang's negligence or an inference of negligence relates to his driving

after drinking intoxicants and to his left turn into the tavern driveway.

The fact that a person has been drinking intoxicants is not, of itself, sufficient basis for an inference of negligence.[3] Even assuming that Hammang was intoxicated,[4] which we cannot do on the record before this court, intoxication alone does not give rise to liability, but only does so when combined with some act of causal negligence.[5]

This court has said:

". . . operating a motor vehicle while under the influence of intoxicating liquor does not in itself provide support for a cause of action to one who has been injured in an accident in which such vehicle participated. *McNamer v. American Ins. Co.* (1954), 267 Wis. 494, 66 N. W. 2d 342. Such driving under the influence of intoxicating liquor must be combined with some phase of negligent operation such as speed, lookout, or management and control, in order to be actionable." [6]

We conclude that there is no direct evidence of Hammang's negligence traceable to his consumption of intoxicants and on this record the jury could draw no inference to that effect. We therefore reach the crucial question of whether negligence can be inferred from his operation of his vehicle in making the left turn.

---

[3] *See Ernst v. Greenwald, supra,* footnote 2; *see also Odya v. Quade* (1958), 4 Wis. 2d 63, 90 N. W. 2d 96.

[4] This court has said that the proper instruction regarding intoxication is: You are instructed that you may consider the evidence as to the defendant's drinking, but you must first be satisfied that the defendant's consumption of alcoholic beverages appreciably affected the exercise of ordinary care in the operation of his automobile. *See Haag v. General Accident Fire & Life Assur. Corp.* (1959), 6 Wis. 2d 432, 433, 434, 95 N. W. 2d 245. *See also Frey v. Dick* (1956), 273 Wis. 1, 76 N. W. 2d 716.

[5] *Frey v. Dick, supra,* footnote 4, at page 9.

[6] *Bronk v. Mijal* (1957), 275 Wis. 194, 203, 204, 81 N. W. 2d 481.

We are not concerned with a car that is not attempting to make a left turn but has momentarily crossed the center line of a highway onto the wrong side of the road. In such a case it is well established that an inference of negligence arises on the part of the invading car and the responsibility rests upon him to relieve himself of that inference.[7]

If a person, in making a left turn, whether at an intersection or a private driveway, in front of an oncoming vehicle, makes the turn at a time when he cannot safely do so without danger of a collision, he is negligent.[8] The important factor in this negligence is that he makes the turn without an efficient observation that he can complete the turn without collision.

It is incorrect, however, to reason from the fact of collision to the conclusion that there must have been negligence on the part of the left-turning driver. This reasoning was rejected in *Grana v. Summerford,*[9] wherein this court said, concerning the negligence of a left-turning driver:

"Although making a left turn in violation of sec. 346.34 (1), Stats., 40 W. S. A., p. 423, is negligence as a matter of law because the section is a safety statute, the breach of the statute is not established from the fact a collision occurred, nor does a breach of the statute establish as a matter of law the degree of contribution of the negligence to the accident. Sec. 346.34 (1) does not impose absolute liability but establishes a standard of care that a left turn into a private driveway cannot be made unless and until such turn can be made with reasonable safety. What is reasonable safety depends upon the facts in the particular case. While we have often com-

---

[7] *Voigt v. Voigt, supra,* footnote 2, at pages 584, 585.

[8] *See Guptill v. Roemer* (1955), 269 Wis. 12, 68 N. W. 2d 579, 69 N. W. 2d 571.

[9] (1961), 12 Wis. 2d 517, 107 N. W. 2d 463.

mented on the seriousness of left turns, other left-turn cases in which the person making the left turn was held to be 50 percent negligent are not necessarily controlling." [10]

An inference of negligence on the part of the left-turning driver does not arise from the fact of collision alone. But here, we think that on the record a jury could infer Hammang, by not having seen the Huck car sooner, which was in plain view, was negligent as to lookout. [11] The testimony of the disinterested witnesses in the Hawkins car is to the effect that Huck had successfully completed his passing maneuver and had returned to his proper lane of travel prior to the collision. In fact this testimony establishes that Huck was proceeding in his proper lane of travel for at least three tenths of a mile prior to striking the Hammang car. Because of this inference of negligence on the part of Hammang, we conclude that it was not error for the trial court to have refused to give the instruction on the presumption of due care.

This does not necessarily mean that on this appeal the verdict must be affirmed. While this court is reluctant to interfere with the jury's apportionment of negligence it has said it will do so when such apportionment is grossly disproportionate in light of the facts of the case. [12] Here, the jury found Huck 30 percent negligent and Hammang 70 percent negligent. In view of the overwhelming indicia of negligence on the part of Huck, this apportionment is so grossly disproportionate, and so contrary to

[10] *Id.* at page 521. *See also Zartner v. Scopp* (1965), 28 Wis. 2d 205, 137 N. W. 2d 107. In the instant case, as in *Zartner,* the accident occurred prior to the enactment of sec. 346.18 (7), Stats., which imposes a duty of yielding the right of way on the left-turning driver independent of lookout.

[11] *Lautenschlager v. Hamburg* (1969), 41 Wis. 2d 623, 628, 165 N. W. 2d 129.

[12] *Ernst v. Greenwald, supra,* footnote 2, at page 773, and cases cited therein.

the facts and circumstances of the record in this case that we conclude that justice has miscarried. We therefore order a new trial in the interest of justice under sec. 251.09, Stats.[13]

On the record here the testimony supports the conclusion that Huck was negligent as to speed, lookout, and management and control, whereas the jury could reasonably infer that Hammang was negligent only as to lookout. While it is true that the jury may apportion a lesser percentage of negligence to a driver who is negligent in several respects as compared to the other driver who is only negligent in one respect,[14] nevertheless, the jury's apportionment here cannot stand. In *Bruno v. Biesecker*,[15] we rejected the contention that on the facts of that case "a left-turning driver's negligence in turning into a private driveway in the path of an approaching car from the opposite direction is as a matter of law at least 50 percent of the total negligence." Similarly, on this record we must conclude that the apportionment of negligence to Hammang as a matter of law was not equal to or greater than Huck's. We think that the plaintiff should have an opportunity to have a new apportionment of negligence found by a new jury.

*By the Court.*—Judgment reversed; cause remanded for a new trial on negligence issue only.

BEILFUSS, J. (*dissenting*). I respectfully dissent. It is my belief that under the facts of this case the question of apportionment of the negligence was a jury issue and that there is evidence and reasonable inferences which support the 70-30 percent finding.

---

[13] *See Bannach v. State Farm Mut. Automobile Ins. Co.* (1958), 4 Wis. 2d 194, 90 N. W. 2d 121; *see also Guptill v. Roemer, supra,* footnote 8, at pages 20a, 20b.

[14] *See Pruss v. Strube* (1968), 37 Wis. 2d 539, 155 N. W. 2d 650.

[15] (1968), 40 Wis. 2d 305, 313, 162 N. W. 2d 135.

I have no quarrel with this court's rejection of the contention that "a left-turning driver's negligence in turning into a private driveway in the path of an approaching car from the opposite direction is as a matter of law at least 50 percent of the total negligence." [1] I do object, however, under the facts of this case, to the court's rejection of a factual finding of the jury that the left-turning driver was 70 percent negligent.

The majority of the court, without saying so, passes on the credibility of the witnesses and states the "testimony supports the conclusion that Huck was negligent as to speed, lookout, and management and control." If we must reject Huck's testimony that he was going 45 to 50 miles per hour and find him negligent as to speed, it does not follow that he was negligent as to management and control. Nor is it a verity that he was negligent as to lookout. The evidence that Hammang had activated his turn signal and that Huck did not timely see the Hammang car is meager and speculative.

The undisputed testimony was that there was at least one-half mile of clear view for both drivers. Hammang had no right to invade his left lane if he knew or in the exercise of reasonable care should have known there was another vehicle traveling toward him in that lane and there was danger of a collision. The traveled portion of the road was 22 feet wide. Hammang had to cross only 11 feet to avoid danger—he had over 2500 feet to view the approach of the other vehicle or vehicles and calculate whether he could safely cross in front of the approaching vehicle.

The comparative causally negligent contribution of the two drivers was clearly a jury issue and the finding that Hammang was guilty of 70 percent of such negligence was within the province of the jury.

[1] *Bruno v. Biesecker* (1968), 40 Wis. 2d 305, 313, 162 N. W. 2d 135.

I would affirm the judgment.

I am authorized to state that Mr. Justice CONNOR T. HANSEN and Mr. Justice ROBERT W. HANSEN join in this dissent.