SCHRAMSKI (Lavera), Individually and as Administratrix of the Estate of Donald Schramski, Appellant, v. HANSON and others, Respondents.

*No. 55. Argued January 8, 1970.—Decided February 6, 1970.*
(Also reported in 173 N. W. 2d 655.)

702

For the appellant there was a brief by *Daniel I. D'Amico* of Cumberland, attorney, and *Wickham, Borgelt, Skogstad & Powell* and *George W. Greene,* all of Milwaukee, of counsel, and oral argument by *Mr. D'Amico.*

For the respondents there was a brief by *Douglas, Bailey & Waggoner* of Spooner, for Western Casualty &

Surety Company, and by *Gwin, Fetzner, Richards & Skow* of Hudson, for State Automobile & Casualty Underwriters, and oral argument by *Dennis C. Bailey* and *C. A. Richards.*

BEILFUSS, J. We believe the following four questions encompass the issues raised by the parties:

1. Is the jury's finding that the plaintiff's intestate was causally negligent supported by any credible evidence?

2. Did the trial court abuse its discretion in reducing the damage award for loss of consortium from $16,000 to $3,000?

3. Did the trial court err in refusing to consider plaintiff's second motion for a new trial on negligence submitted more than sixty days after the verdict was entered?

4. Is the plaintiff entitled to a new trial on negligence in the interest of justice under sec. 251.09, Stats.?

A request was made to change answers in the jury verdict from "yes" to "no" respecting Schramski's causal negligence. The motion was denied.

The evidence supporting an inference of the negligence of Schramski is the damage to the bus and trailer, the negative evidence of no skid marks on the highway, and the extensive fog. The trial court felt this was sufficient to support the jury's finding. In the memorandum decision the trial judge stated:

"The damage to the Schramski vehicle was very substantial, indicating that he hit at quite a high rate of speed; there were no skid marks, and the damage would indicate that Mr. Schramski never made any attempt to turn, at least before he got within a foot or two of the truck. From these facts it appears to this court that if Hanson actually did what he said he did, and if it was as foggy as Hanson says it was, then Mr. Schramski must have been driving much too fast for the weather conditions then existing, and the fault would probably be all his."

The photographic exhibits and testimony of the witnesses reveal considerable damage was done to both vehicles. The plaintiff argues that the damage to the vehicles is evidence only of a collision, and not negligence. Under the facts and circumstances as they appear in the record before us we do not accept this argument. The damage done to the two vehicles, the lack of skid marks, and the foggy atmospheric condition permit an inference of excessive speed on the part of Schramski under the facts and circumstances then and there existing.

To support her argument the plaintiff states that because Schramski was on an arterial and favored highway that it was error for the court to instruct the jury that it was Schramski's duty to drive:

". . . at such a rate of speed as will permit him to stop within the distance he can see ahead. This means that if, by reason of fog, the distance that he can plainly see objects or obstructions ahead of him is reduced, he must drive at such a rate of speed as will enable him to bring his car to a standstill within such reduced distance."

The essence of this argument is that the instruction given pertains only to automobiles traveling on the arterial ahead of the plaintiff's intestate, not to vehicles crossing the arterial. The standard upon which the lower court instructed the jury was clearly set forth by this court in *Guderyon v. Wisconsin Telephone Co.* (1942), 240 Wis. 215, 2 N. W. 2d 242. That case involved a wrongful death action to recover damages for the death of plaintiff's intestate in an accident in which her automobile struck a parked truck along the highway. There was evidence that the visibility near the truck was obscured by smoke drifting across the highway. In holding her negligent as to speed this court said, at page 227:

"Assuming, in the absence of any proof to the contrary on the subject of lookout, that she exercised due care for her safety in that respect, she must have seen the cloud of smoke when she was still at least one hundred

feet away and that it was being blown across the roadway in such volume and density as to obstruct the view along the highway in and beyond the smoke. Under these circumstances there was applicable to her conduct in the control and management and the speed at which she continued operating the car, the well-established principle that it is the duty of the operator to drive it at such rate of speed that he can bring his car to a standstill within the distance that he can plainly see objects or obstructions ahead of him; and that if he continues to proceed when he is unable to see because his vision is obscured by smoke, or dust, or darkness, he is negligent. *Lauson v. Fond du Lac,* 141 Wis. 57, 123 N. W. 629; *Johnson v. Prideaux,* 176 Wis. 375, 187 N. W. 207; *Fannin v. Minneapolis, St. P. & S. S. M. R. Co.* 185 Wis. 30, 200 N. W. 651; *Leonard v. Bottomley,* 210 Wis. 411, 245 N. W. 849; *Mann v. Reliable Transit Co.* 217 Wis. 465, 468, 259 N. W. 415."

It is a very strained distinction to assert that the parked truck in *Guderyon* is in any sense a different obstruction than the defendants' semitrailer crossing the intersection in the present case. The duty to maintain a speed in which a stop could be made in fog was incumbent upon Schramski.[1] The instruction was completely in order and the jury could find that Schramski was going too fast for the existing weather conditions.

In addition, plaintiff also argues that Schramski was entitled to the benefit of the presumption of due care extended to a deceased driver. Such a presumption would be in order only if there was no evidence of his negligence. Once evidence was introduced that would support a jury finding of negligence the presumption is eliminated. *Moose v. Milwaukee Mut. Ins. Co.* (1968), 41 Wis. 2d 120, 163 N. W. 2d 183.

Plaintiff-appellant asserts that this court's opinion in *Caldwell v. Piggly Wiggly Madison Co.* (1966), 32 Wis. 2d 447, 145 N. W. 2d 745, entitled her to ask for re-allocation of the negligence of only one party. That case is not in point. The re-allocation permitted there

[1] *Also see Ruid v. Davis* (1959), 8 Wis. 2d 288, 99 N. W. 2d 129.

related to the apportionment between two defendants for the purpose of contribution. The negligence attributed to the plaintiff was allowed to stand and a new trial was ordered as to the negligence of each defendant. In the instant case there are only two parties upon whom negligence can be placed, the plaintiff's intestate and the defendant Hanson. Re-allocation of negligence, if it were to be allowed, would have to be as to both drivers.

The standard of review to be applied to this court's analysis of the trial court's reduction of damages for consortium from $16,000 to $3,000 is whether the jury award was within reasonable limits and whether the reduction amounts to an abuse of discretion. *Neider v. Spoehr* (1968), 39 Wis. 2d 552, 159 N. W. 2d 587.

In analyzing the evidence pursuant to this court's directive in *Moritz v. Allied American Mut. Fire Ins. Co.* (1965), 27 Wis. 2d 13, 133 N. W. 2d 235, respecting this element of damages the trial court stated, in a thorough opinion:

"There was almost no testimony in this case as to services performed by the husband for the wife, other than said furnishing of said support, and it is obvious that there could have been none. The testimony did show that the decedent was a very hard worker, and that prior to his death he had a full-time job at the Turtle Lake Dairy plant, and that in addition to such full-time job he also drove school bus for the Turtle Lake High School, and that he also made extra money by tending bar on weekends, and that he also performed certain work around his farm. From this testimony it wouldn't appear that he had any time left to perform any services for his wife.

"When we eliminate the item of loss of support, we find that what we are compensating for under consortium for the period from the date of the accident to the date of the death is the same thing that we are compensating for under the term 'loss of society and companionship'

for the period after the date of death, that is, loss of love, companionship, affection, society and sexual relations. It is impossible to find a yardstick to measure the value of these items. The legislature has solved this problem for us in relation to the item of loss of society and companionship after death by putting a statutory limit thereon of $3,000. I have never had a case where the jury awarded less than $3,000 for this item, and I have never had a defendants' counsel argue that it should be reduced to a figure under $3,000, so that the item is always reduced from whatever the jury finds to $3,000 and there is no argument about it. However, when there is no statutory limit and there is no pecuniary guide to go by in valuing such an item as this, there is a very difficult problem.

"The period for which the award was made is about fifteen months, and the award being $16,000, this comes to slightly more than $1,000 per month. The court does not believe that this award resulted from any perversity or prejudice or error occurring during the course of the trial, so the question to be decided is:

"Is the amount of the award within the range of reasonable damages which could be awarded for this item: *Gleason v. Gillihan, 32 Wis 2d 50 at 59*

"While, as stated above, there is no readily apparent standard by which an award for an item such as this can be measured, it is apparent that there must be some limit on the award for this item; otherwise, we would have to sustain an award for a million dollars. The above mentioned $3,000 statutory limit on the award for loss of society and companionship after death comes to mind as a comparison. While the court would not want to say that an award for loss of consortium without any support item included could never exceed $3,000 even if such loss was going to be over a long period of time, in the case of loss for only fifteen months the comparison does seem legitimate. It is this court's opinion that the

award of $16,000 is not within the range of reasonable damages which could be awarded for this particular item in this case, and further, it is this court's opinion that the sum of $3,000 would be a reasonable sum to award for such item in this case."

In her attempt to show an abuse of discretion by the trial court the plaintiff catalogues the decision of this court upholding a larger damage award for loss of services in *Atkinson v. Huber* (1955), 268 Wis. 615, 68 N. W. 2d 447. This court there upheld an award of $25,000 to a husband for the loss of services of a wife who was 95 percent permanently disabled. Plaintiff states in her brief that the facts of that case are distinguishable and it is clear they are so distinguishable. The period of time in the present case for which damages are sought is fifteen months. In *Atkinson,* the period of recovery was the life expectancy of the husband, 12.26 years. It is submitted that the sole benefit to be gleaned from looking at other cases on damages must lie in the similarity of fact situations.

No analogous fact situations have been presented to demonstrate that it was an abuse of discretion to reduce the damage figure from $16,000 to $3,000 for loss of services. The trial court's analysis of the evidence illustrates that the $16,000 figure was beyond the range of reasonableness for this one element of damages. The award fixed by the trial court of $3,000 is within reasonable limits and the reduction to that amount was not an abuse of discretion.

In her original motion for a new trial respecting apportionment of negligence the plaintiff asked only that the 45 percent attributed to Schramski be re-allocated to defendant Hanson, but that the 55 percent already attributed to Hanson not be disturbed. The trial judge stated in his second memorandum decision that he informed plaintiff's counsel upon argument of motions after verdict he did not believe a new trial could be granted on that basis alone. The plaintiff was given an

opportunity to amend her motion asking for a completely new trial on negligence. That offer was expressly declined.

Sec. 270.49 (1), Stats., provides that all motions for new trial must be "made and heard" within two months after the verdict is rendered unless the court extends such time for cause by order. The trial court in the present case twice extended the time for *deciding* motions, but not for making them. After the final decision was rendered February 13, 1969, the plaintiff attempted to make an additional motion for a new trial on negligence without the previous reservations. Without reaching the merits of that motion the court denied it, stating that it no longer had jurisdiction to consider such motions.

In *Hurst v. Hungerford* (1963), 19 Wis. 2d 537, 120 N. W. 2d 727, this court reversed an order under sec. 270.49 (1), Stats., granting a new trial because the order was not entered within the sixty-day period following the verdict. All motions had been properly made, but failure to enter the order within the time period divested the trial court of jurisdiction in the matter.[2]

Here it is clear that the trial court extended the time only for the purpose of deciding the motions. The first extension was to allow the court to accept and consider briefs; the second was because of the anticipated press of other scheduled judicial duties. The motions had been made and argued, and there are no affidavits or stated reasons for extending the time to make the motions. We are of the opinion the trial court correctly determined the orders extending the time were only for the purpose stated, to wit, to decide the motions and that the trial court had no jurisdiction to hear additional or amended motions without a specific reservation for that purpose and for cause.

---

[2] *See also Alberts v. Rzepiejewski* (1962), 18 Wis. 2d 252, 118 N. W. 2d 172, 119 N. W. 2d 441, in which sec. 270.49 (1), Stats., was held controlling over sec. 269.46 (3) provisions relating to a new trial in the interest of justice.

The plaintiff-appellant finally urges that this court should exercise its discretion and award a new trial in the interest of justice under sec. 251.09, Stats. This section permits this court to order a new trial if it appears "from the record, that the real controversy has not been fully tried, or that it is probable that justice has for any reason miscarried," this court may in its discretion reverse the judgment or order.

There is no claim the case has not been fully tried, the contention is that justice has miscarried because of the 55–45 apportionment of negligence.

We believe the jury was properly instructed and that under the evidence presented to them (there is no suggestion other evidence was available but not presented) they could as reasonable persons conclude both drivers were negligent. We cannot say as a matter of law the jury's apportionment of the negligence was incorrect and we are not convinced as a matter of discretion that a second trial would result in a verdict more favorable to the plaintiff, nor that justice has miscarried.

We are of the opinion that judgment should be entered on the verdict as to the liability features of the case and a new trial ordered on the issue of damages only, unless plaintiff consents to an entry of judgment as ordered by the trial court, such consent to be exercised by filing a remittitur in accordance with the trial court's order.

*By the Court.*—Order affirmed with directions.